**Adja SECK, an infant under the age of 14 years, by her parent and natural guardian, Linda SECK, and Linda Seck, individually, Plaintiff,**

**v.**

**Charles HAMRANG, M.D., Defendant.**

**No. 85 Civ. 1726 (LLS).**

United States District Court,
S.D. New York.

April 6, 1987.

Steven Bennett Blau, New York City, for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant; Donna Edbril, of counsel.

## OPINION

STANTON, District Judge.

Defendant's motion for an order directing, in accordance with *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, that a medical malpractice panel be convened in accordance with section 148–a of the New York Judiciary Law, and its determination be obtained and applied in this diversity medical malpractice suit, is denied.

The thoughtful reasons given in *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978) and *Hibbs v. Yashar*, 522 F.Supp. 247 (D.R.I.1981) against the use of such state-created panels by federal courts in medical malpractice actions resting on diversity jurisdiction have been largely rejected by the Court of Appeals for the First Circuit in *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir.1981), and more than a dozen federal courts have "concluded that the *Erie* doctrine requires a federal court sitting in diversity to apply a state statute requiring referral of a medical malpractice action to a state-created arbitration panel or hearing tribunal." *Feinstein*, 643 F.2d at 885 n. 7. *See Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146, 149 n. 4 (5th Cir.1981), *aff'g*, 472 F.Supp. 468 (E.D.La.1979); *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir. 1981); *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287 (4th Cir.1980); *Edelson v. Soricelli*, 610 F.2d 131 (3d Cir.1979); *Stoner v. Presbyterian University Hospital*, 609 F.2d 109 (3d Cir.1979) (per curiam); *Hines v. Elkhart General Hospital*, 603 F.2d 646 (7th Cir.1979); *Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir.1979); *Knoblett v. Kinman*, 623 F.Supp. 805 (S.D.Ind.1985); *DiFilippo v. Beck*, 520 F.Supp. 1009 (D.Del.1981); *Kanouse v. Westwood Obstetrical & Gynecological Associates*, 505 F.Supp. 129 (D.N.J.1981); *Davison v. Sinai Hospital*, 462 F.Supp. 778 (D.Md.1978); *aff'd*, 617 F.2d 361 (4th Cir.1980); *Byrnes v. Kirby*, 453 F.Supp. 1014 (D.Mass.1978); *Wells v. McCarthy*, 432 F.Supp. 688 (E.D.

Mo.1977); *Marquez v. Hahnemann Medical College & Hospital*, 435 F.Supp. 972 (E.D.Pa.1976); *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn.1975). As would be expected, the individual arguments varied according to the particular state's law. However, similar results were reached by courts in the First, Third, Fourth, Fifth, Sixth, Seventh and Eighth Circuits. (The Pennsylvania statute is no longer applied in federal courts, the Pennsylvania Supreme Court having held it unconstitutional. *Firich v. American Cystoscope Makers, Inc.*, 635 F.2d 259 (3rd.Cir.1980)). Apparently the question is open in the Second Circuit.

Unavoidably, because the latest (save one) of those decisions were rendered in 1981, none of them considered the effect on this question of either the extensive amendments in 1983 to Fed.R.Civ.P. 16, or the Supreme Court's recent decision of *Burlington Northern R.R. Co. v. Woods*, —— U.S. ——, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). Furthermore, and naturally enough, none of them considered the New York statute at issue here.

The New York statute applies only in certain counties (*see* N.Y. Judiciary Law § 148–a.1) and its clear purpose is to aid in the settlement of pending lawsuits. *See Treyball v. Clark*, 65 N.Y.2d 589, 590, 483 N.E.2d 1136, 493 N.Y.S.2d 1004 (1985); *Bernstein v. Bodean*, 53 N.Y.2d 520, 527, 426 N.E.2d 741, 443 N.Y.S.2d 49 (1981). The panel is established "to facilitate the disposition of medical malpractice actions ... in the supreme court" under rules established by the respective Appellate Divisions (N.Y. Judiciary Law § 148–a.1); the parties may waive use of the panel by agreement (*id.* subd. 3(c)); the hearing is informal and off the record (*id.* subd. 4); and the statute contemplates complete or partial disposition of the case after "presentation and discussion between the panel and counsel" (*id.* subd. 7).

 The convening by this court of such a panel for settlement purposes may be a technique—among others—available under new Fed.R.Civ.P. 16(c), which allows the court to "take action with respect to ... (7) the possibility of settlement or the use of

extrajudicial procedures to resolve the dispute". As such, it would be but one of many available, including reference to arbitration, mediation, summary jury trial, bifurcation and trial of separate issues, and others. The purpose of the Rule's amendment was to increase the court's flexibility, resource and discrimination in the pretrial management and resolution of cases. A given technique may be appropriate in one case and not in another.

■ Here, convention of a medical malpractice panel and reference of the case to it would be inappropriate. This case is ready and scheduled for trial on June 15, 1987. The "just, speedy, and inexpensive determination" (Fed.R.Civ.P. 1) of this action is now best obtained by its prompt trial, without further procedures.

Thus this case illustrates the direct collision between the federal Rule and the State law.

*Burlington Northern R.R. Co. v. Woods,* — U.S. ——, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) so closely parallels this case as to control it. In *Burlington* an Alabama statute sought to penalize frivolous or dilatory appeals by requiring the appellate court to add ten percent to the amount of any money judgment it affirmed. The Supreme Court held that this state-created mandatory penalty conflicted with the purposes and operation of Rule 38 of the Federal Rules of Appellate Procedure, which provides that a Court of Appeals which determines that an appeal is frivolous may award damages and single or double costs. Rule 38 having been properly enacted, the Supreme Court held that it occupied the field, and the Alabama statute thus had no application to a judgment entered by federal courts sitting in diversity. The Court stated:

> Rule 38 affords a Court of Appeals plenary discretion to assess "just damages" in order to penalize an appellant who takes a frivolous appeal and to compensate the injured appellee for the delay and added expense of defending the District Court's judgment. Thus, the Rule's discretionary mode of operation unmistakably conflicts with the mandatory provision of Alabama's affirmance penalty

statute. Moreover, the purposes underlying the Rule are sufficiently co-extensive with the asserted purposes of the Alabama statute to indicate that the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions.

> Petitioner nevertheless argues that, because Alabama has a similar Appellate Rule which may be applied in state court alongside the affirmance penalty statute, see Ala. Rule App. Proc. 38; *McAnnally v. Levco, Inc.,* 456 So.2d 66, 67 (Ala. 1984), a federal court sitting in diversity could impose the mandatory penalty and likewise remain free to exercise its discretionary authority under Federal Rule 38. This argument, however, ignores the significant possibility that a Court of Appeals may, in any given case, find a limited justification for imposing penalties in an amount less than 10% of the lower court's judgment. Federal Rule 38 adopts a case-by-case approach to identifying and deterring frivolous appeals; the Alabama statute precludes any exercise of discretion within its scope of operation. Whatever circumscriptive effect the mandatory affirmance penalty statute may have on the state court's exercise of discretion under Alabama's Rule 38, that Rule provides no authority for defining the scope of discretion allowed under Federal Rule 38.

> Federal Rule 38 regulates matters which can reasonably be classified as procedural, thereby satisfying the constitutional standard for validity. Its displacement of the Alabama statute also satisfies the statutory constraints of the Rules Enabling Act. The choice made by the drafters of the Federal Rules in favor of a discretionary procedure affects only the process of enforcing litigants' rights and not the rights themselves.

*Burlington,* 107 S.Ct. at 970–71 (footnote omitted).

■ Similarly, the present New York statute would so impinge upon the broad procedural powers of the federal district courts to control and fashion techniques for

settlement under Fed.R.Civ.P. 16 that its "underlying purpose and mandatory mode of operation conflict with the purpose and operation" of Rule 16, as illustrated by this very case. Accordingly, the New York statute has no application to the pretrial procedures of a federal court sitting in diversity and defendant's motion is denied.

So ordered.