Jeanne ELLINGSON et al.

v.

WALGREEN CO.

No. 98–CV–F557 (JMR/FLN).

United States District Court,
D. Minnesota.

Dec. 13, 1999.

Gary Edwin Stoneking, Stoneking Law Office, Minneapolis, MN, for Plaintiffs.

Gary Edwin Stoneking, (See above), for Daniel Ellingson, plaintiff.

Brian Alan Wood, Marc A. Al, Eric A. Bartsch, Rider Bennett Egan & Arundel, Minneapolis, MN, for Defendant.

## ORDER

ROSENBAUM, District Judge.

Defendant requested permission from the Court to file a motion for reconsideration of the Court's Orders dated July 19, 1999, and July 30, 1999, pursuant to Local Rules 7.1(g) and *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572 (Minn.1999) ("*Lindberg*"). On October 5, 1999, permission was granted. The parties submitted additional briefs and memoranda in support of their respective positions. Upon reconsideration, the Court vacates its Orders of July 19 and July 30, 1999, and hereby dismisses this case.

### I. *Background*

In January, 1996, plaintiff Jeanne Ellingson went to Walgreen's pharmacy to refill a prescription. The prescription called for quinidine, a heart medication. All parties agree that Walgreen's erred by filling the prescription with quinine, an entirely different medication. Ms. Ellingson used the improper medication throughout February, 1996, and began experiencing hearing and vision problems. By the end of February, Ms. Ellingson began suffering psychotic episodes, culminating in a six-day psychiatric hospital stay. During this time, the hospital staff discovered the medication error, and immediately corrected the medication. Ms. Ellingson's condition improved over the next few days, and she was discharged on March 6, 1996.

Plaintiffs originally filed this action on January 14, 1998, in Minnesota state court claiming pharmacy malpractice, and seeking damages for Jeanne Ellingson's hearing loss, blurred vision, psychiatric treatment, and post-traumatic stress disorder. On February 3, 1998, Walgreen's timely removed the case to this Court based on diversity jurisdiction.

On April 29, 1998, Chief Magistrate Judge Franklin L. Noel ordered discovery to be completed by December 1, 1998. Notwithstanding earlier requests by Walgreen's, plaintiffs did not disclose expert witness information until September 11, 1998. At that time, plaintiffs' counsel served answers to interrogatories, which revealed that Ms. Ellingson's treating physician would testify that her injuries were a direct result of her taking quinine instead of quinidine. Plaintiffs' counsel also produced a letter from David L. Haglund, M.D., stating that Ms. Ellingson's hearing loss was a result of the misfilled prescription. No other affidavits or answers to interrogatories were served.

On February 24, 1999, Walgreen's moved to dismiss plaintiffs' complaint for failure to comply with the requirements of Minn.Stat. § 145.682 in producing expert disclosure affidavits.[1] In reply to the motion, plaintiffs stated that Dr. Haglund had left the country, and that they required additional time in which to secure an expert witness.

The Court denied defendant's motion by Orders issued July 19 and July 30, 1999. Defendant now seeks reconsideration,

---

1. As this Court's consideration of Minn.Stat. § 145.682 is dispositive, there is no need to examine other proffered bases for dismissal. The statute is reproduced at the Appendix to this Order.

claiming the recent decision in *Lindberg* mandates a contrary determination.

## II. *Analysis*

Minnesota's legislature enacted Minn. Stat. § 145.682 in 1988. The Supreme Court subsequently emphasized the statute's high standard for expert disclosure and the importance of strict compliance. *See Lindberg*, 599 N.W.2d at 576. The statute requires two types of affidavits relevant to this case: the "expert review affidavit" and the "expert disclosure affidavit." Minn.Stat. § 145.682, subd. 2. Each affidavit is required in any action alleging medical malpractice based on tort, where expert testimony is needed to establish a prima facie case. *See id.* In the absence of either affidavit, the statute mandates dismissal with prejudice. *See id.*

The "expert review affidavit" requires an expert's review of the facts of the case with plaintiffs' attorney to verify the potential existence of a cause of action. Minn. Stat. § 145.682, subd. 3(a). The affidavit must either accompany the complaint when filed, or must be filed within 90 days of service of the summons and complaint, *see id.*, subd. 3(b), or within 60 days after demand for the affidavit. *Id.*, subd. 6.

The "expert disclosure affidavit" requires identification of expert witnesses, as well as "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." *Id.*, subd. 4. Answers to interrogatories may satisfy this requirement in lieu of the affidavit. *See id.* Again, the statute mandates dismissal upon motion if plaintiff does not serve the requisite affidavit or answers to interrogatories within 180 days of the commencement of the suit. *See id.*

Shortly after this Court's denial of Walgreen's motion to dismiss, the Minnesota Supreme Court issued its opinion in *Lindberg*, which emphasized the "uncomplicated and unambiguous" requirements of the expert disclosure affidavit. The court noted:

At a minimum, the affidavit or answers to interrogatories must disclose 'specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation between the violation the [*sic* ] standard of care and the plaintiff's damages.

*Lindberg*, 599 N.W.2d at 577. *Id.* (quoting *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn.1990)).

The parties agree plaintiffs did not submit either affidavit within the statutory time frames. The action was commenced on January 14, 1998; the time to file the expert review affidavit expired April 14, 1998; the time to file the expert disclosure affidavit expired July 13, 1998. Plaintiffs' answers to interrogatories were filed September 11, 1998, along with Dr. Haglund's letter indicating his departure from the country.

■ Neither the interrogatory answers nor the doctor's letter meet the statute's requirements. Each is only a general statement, and neither complies with the required investigation or supplies a prima facie showing of cognizable causation. *See Lindberg*, 599 N.W.2d at 578 (rejecting affidavits that contain nothing more than "general statements" or "broad and conclusory statements as to causation"). Plaintiffs finally produced an expert almost one year after the expiration of the statutory deadline.

To excuse their lack of timeliness, plaintiffs first assert their case does not require an expert witness, freeing them of Minn. Stat. § 145.682 R's requirements. They then argue that, even if such a witness is required, they have shown good cause for failing to meet the statutory deadline, and ought be granted a time extension in which to find an expert. Plaintiffs then argue that amendments to Rule 26(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") mandate the application of federal, as op-

posed to Minnesota, rules. Each argument is without merit.

■ Plaintiffs assert no expert testimony is needed, because any juror can find negligence for an improperly filled prescription. This argument fails because it answers the wrong question. Walgreen's clearly erred. But the question which needs expert information is whether the substitution of quinine for quinidine can cause the untoward physical and psychiatric symptoms for which the plaintiffs seek damages. While expert testimony may not be needed to show a standard of care in filling prescriptions, plaintiffs must still show causation. *See Lindberg,* 599 N.W.2d at 577. Expert testimony is needed to establish such causation.

■ Plaintiffs' second argument, claiming excusable neglect and requesting additional time to secure an expert witness, is also without merit. Minn.Stat. § 145.682 affords an exception to the statutory time limit upon a showing of good cause. *See* Minn.Stat. § 145.682, subd. 4(b). Plaintiffs point to *Stern v. Dill,* 442 N.W.2d 322, 324 (Minn.1988), where the Minnesota Supreme Court allowed an extension of time, even after the expiration of the 180 day period. Plaintiffs claim Dr. Haglund's departure from the country shows requisite good cause. The Court does not agree. Dr. Haglund left the country at or around the commencement of this lawsuit—perhaps even before it was filed. Plaintiffs, therefore, had nearly the full 180 days in which to find a replacement, yet they offer no reason for failing to do so. This does not demonstrate excusable neglect.

■ Next, plaintiffs' claim that Fed. R.Civ.P. 26(a) controls instead of Minn. Stat. § 145.682 is unavailing. Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its voluminous progeny, a federal court sitting in diversity is to apply the proper state's substantive and federal procedural law. Plaintiffs claim *Stern v. Dill* supports their view that the Minnesota Supreme Court considers Minn.Stat. § 145.682 to be procedural. They then argue this Court should

follow the Federal Rules of Civil Procedure, allowing greater discretion in determining whether the case should be allowed to proceed.

Understandably, plaintiffs read *Stern* broadly. It is true that Justice Simonette held: "... the time limits imposed under section 145.682, subd. 2(2) and subd. 3, are procedural. Consequently, we hold that the time for serving the affidavits under the statute may be extended, even after the time limits have expired ... upon a showing of excusable neglect." *Stern,* 442 N.W.2d at 324. Setting aside this Court's determination of no excusable neglect, the flaw in plaintiffs' argument is that the state court did not consider this question in an *Erie* context and, in fact, as a state court, would not face an *Erie* question. The federal courts, in the context, have consistently considered Minn.Stat. § 145.682 as substantive. *See Oslund v. United States,* 701 F.Supp. 710, 713–14 (D.Minn.1988) (rejecting the contention that § 145.682 preempts federal procedure because Minnesota courts defined § 145.682 as being procedural).

■ Plaintiffs particularly claim the 1993 amendments to Fed.R.Civ.P. 26(a) preempt Minn.Stat. § 145.682 in diversity cases. This contention, too, has been uniformly rejected by the federal courts. *See, e.g., Bellecourt v. United States,* 994 F.2d 427 (8th Cir.1993); *Anderson v. United States,* No. Civ. 5–96–235 (D.Minn. Jan. 30, 1998) (adopting Report and Recommendation granting defendant's motion to dismiss found at *Anderson v. United States,* No. Civ. 5–96–235, 1998 WL 92460 (D.Minn. Jan. 5, 1998)).

Plaintiffs next suggest the federal courts followed Minn.Stat. § 145.682 prior to the 1993 amendments. The implicit claim, then, is that these courts have applied federal rules thereafter. Plaintiffs are in error. In 1996, the Eighth Circuit, albeit in an unpublished opinion, affirmed a district court's dismissal of a malpractice claim stating, "[W]e agree with the district court that expert testimony was necessary for

[plaintiffs] to pursue their malpractice action, and that [plaintiff's] failure to comply with Minnesota's expert affidavit requirements mandated dismissal with prejudice." *Carmen v. Mayo Foundation,* 81 F.3d 165 (8th Cir.1996); *see also Anderson,* 1998 WL 92460 at *3 (stating that federal courts "are obligated to apply the rigors of Minn. Stat. § 145.682 to malpractice claims brought under [the federal courts' ] diversity jurisdiction.").

Having all of these things in mind, and recognizing that no good cause has been shown for plaintiffs' failure to conform to the statutory mandate of Minn.Stat. § 145.682, this case must be dismissed with prejudice.

Plaintiffs are understandably concerned that this ruling means an allegedly negligent defendant will escape liability because of their failure to comply with Minnesota's expert affidavit statute.[2] This is the clear intent of Minnesota's legislature, both in its statute and as the statute has been interpreted by its highest Court. Speaking in *Lindberg,* Minnesota's highest court said, "while we certainly recognize that the statute may have harsh results in some cases, it cuts with a sharp but clean edge." *Lindberg,* 599 N.W.2d at 578.

### III. *Conclusion*

For the reasons set forth above, IT IS ORDERED that:

1. The Court's Orders of July 19 and July 30, 1999, are hereby vacated.

2. Defendant's motion for dismissal is granted, and this case is dismissed with prejudice.

### APPENDIX

145.682. Certification of expert review; affidavit

Subdivision 1. Definition. For purposes of this section, "health care provider" means a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care as defined in section 145.61, subdivisions 2 and 4, or a certified health care professional employed by or providing services as an independent contractor in a hospital.

Subd. 2. Requirement. In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

Subd. 3. Affidavit of expert review. The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that:

(a) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or

(b) the expert review required by paragraph (a) could not reasonably be obtained before the action was commenced because of the applicable statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit in paragraph (a) must be served on defendant or the defendant's counsel within 90 days after service of the summons and complaint.

Subd. 4. Identification of experts to be called.

be available to the plaintiffs.

---

**2.** The Court, of course, expresses no opinion as to whether other, or collateral, relief may

(a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

(b) The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses.

(c) In any action alleging medical malpractice, all expert interrogatory answers must be signed by the attorney for the party responding to the interrogatory and by each expert listed in the answers. The court shall include in a scheduling order a deadline prior to the close of discovery for all parties to answer expert interrogatories for all experts to be called at trial. No additional experts may be called by any party without agreement of the parties or by leave of the court for good cause shown.

Subd. 5. Responsibilities of plaintiff as attorney. If the plaintiff is acting pro se, the plaintiff shall sign the affidavit or answers to interrogatories referred to in this section and is bound by those provisions as if represented by an attorney.

Subd. 6. Penalty for noncompliance. Failure to comply with subdivision 2, clause (1), within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

Failure to comply with subdivision 2, clause (2), and subdivision 4 results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

Subd. 7. Consequences of signing affidavit. The signature of the plaintiff or the plaintiff's attorney constitutes a certification that the person has read the affidavit or answers to interrogatories, and that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, it is true, accurate, and made in good faith. A certification made in violation of this subdivision subjects the attorney or plaintiff responsible for such conduct to reasonable attorney's fees, costs, and disbursements.