**Goldie POINDEXTER and Cary Poindexter, Individually and as Heirs at Law of the estate of Shahayla Poindexter, Deceased, Plaintiffs**

v.

**Eulogio BONSUKAN, M.D., And the United States, Defendants**

No. 999CV315.

United States District Court,
E.D. Texas,
Lufkin Division.

April 27, 2001.

Claude Edward Welch, Lufkin, Glenn Murphy Douglas, Crowley & Douglas, Houston, for Plaintiff.

C. Victor Haley, Nacogdoches, TX, for Defendant Bonsukan.

Andrea Hedrick Parker, Beaumont, TX, for Defendant United States.

## *MEMORANDUM*

COBB, District Judge.

This medical malpractice controversy arises out of the death of an eighteen-day old infant, Shahayla Poindexter. Plaintiffs allege that Defendants, the doctors who treated Shahayla, were negligent in failing to properly treat her. Defendant Dr. Bonsukan moves to strike the report of Plaintiffs' expert, Dr. Stanley Spinner, because, allegedly, his report does not satisfy the requirements of section 13.01(r)(6) of the Texas Medical Liability and Insurance Improvement Act (Act). Defendant United States of America (USA) moves to strike the report of Dr. Gary Noel because, allegedly, his report was not presented within the timeframe set out in section 13.01(d) of the Act. Plaintiffs contest Defendants' alle-

gations and, alternatively, request a 30–day grace period within which to comply with the Act's reporting requirements. The Court concludes that the expert reporting provisions at issue in this case derogate the discretion vested in federal courts by the Federal Rules of Civil Procedure. Those state provisions, therefore, are not applicable in federal court. Moreover, even if those provisions are applicable in federal court, the Court concludes that Dr. Skinner's report represents a good faith effort to comply with the expert report provisions, and Plaintiff's failure to timely file Dr. Noel's report was not intentional or the result of conscious indifference but was the result of accident or mistake. Because Dr. Noel's report is on file, there is no need to grant Plaintiffs' requested grace period. Defendants motions are DENIED.

## I. Introduction

Before the birth of Shahayla Poindexter, Goldie Poindexter, her mother, received an intra-partum antibiotic treatment for Group B Streptococcus (Group B Strep) bacterial infection from physicians with East Texas Community Health Services, Inc. She was treated by Dr. Ghazala Khan and Dr. Farahaba Kakhdir. The treatment was completed without complication, but the risk that the child would contract Group B Strep was higher than it would have been had her mother not needed the treatment. Shahayla was born on June 25, 1998. Seventeen days later the Poindexters took Shahayla to the emergency room at Nacogdoches Memorial Hospital because she had a temperature of 102 degrees and had been crying for several hours. After examining Shahayla, Defendant Dr. Eulogio Bonsukan sent the Poindexters home. Shahayla died thirteen hours later.

The Poindexters allege that Shahayla's death was caused by Dr. Bonsukan's failure to perform various medical procedures on the child when he knew she (1) had a high fever, (2) had been crying for a sustained period of time, and (3) was predisposed to contracting Group B Strep. Plaintiffs also allege that Dr. Khan and Dr. Kakhdir were negligent in causing Shahayla's death. Because federal law considers Dr. Kahn and Dr. Kakhdir to be federal employees, *see* 42 U.S.C. § 223(g)-(n), Defendant USA was substituted as the proper defendant. *See* 28 U.S.C. § 1346(b), 2401(b), 2671–2680 (Federal Tort Claims Act). Under Texas law, Plaintiffs are required to submit an expert report and curriculum vitae from a qualified expert within 180 days of their suit. Plaintiffs seek to meet this requirement with the expert opinion of Dr. Spinner and Dr. Noel. Defendant challenges the timeliness of Dr. Noel's report and the adequacy of Dr. Spinner's report under the Act.

## II. Texas Medical Liability and Insurance Improvement Act

The Texas legislature enacted the Act to curtail frivolous claims against physicians and other health care providers. *See Horsley–Layman v. S.M. Angeles, M.D.,* 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet.). An important area that the legislature decided to regulate was the plaintiff's production of expert reports. There are two provisions in section 13.01 relating to expert reports. The first provision is not relevant in this case. *See* § 13.01(a)(3). The second provision requires that plaintiff file one or more expert reports for each defendant physician no later than 180 days after the date on which a health care liability action is filed. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d)(1). The report must meet the content requirements in the Act. *See* § 13.01(r)(6). If a plaintiff fails to

comply with these provisions and the defendant files a motion seeking sanctions, a trial court has no discretion and must enter an order dismissing the case with prejudice. *See* § 13.01(e)(3).

### III. Applicability of section 13.01 in Federal Court

■ As a general rule, discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure and not by state discovery practice. *See* 8 Wright and Miller, Federal Practice and Procedure § 2005 (Supp.2000) (noting that except for matters of privilege and Rule 69 discovery in aid of execution, it is "wholly settled that discovery in a federal court is governed only by these rules and that state discovery practices are irrelevant"); *Broussard v. Lemons,* 186 F.R.D. 396, 397 (W.D.La.1999) ("Clearly, federal law governs this discovery dispute as federal courts sitting in diversity apply the substantive law of the state providing the law of decision while following federal procedural law."). Before the Court proceeds to determine whether Plaintiffs have failed to comply with the expert disclosure provisions of the Act, therefore, it must first determine whether the provisions apply in federal court. If the Act's expert disclosure requirements do not apply in federal court, then Defendants' motions to strike and to dismiss must be denied.

■ Federal courts apply state substantive law "when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 687 (5th Cir.1991); *see also Hanna v. Plumer,* 380 U.S. 460, 465–67, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The distinction between procedural and substantive law, however, is "sometimes a challenging endeavor." *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). "Where the state rule reflects a substantive state policy *not in conflict with the plain meaning* of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* decision." *Exxon,* 42 F.3d at 949 (emphasis added); *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136 (distinguishing between the analysis required by *Erie,* 304 U.S. at 68, 58 S.Ct. 817, and that required by the Rules Enabling Act). The Supreme Court, however, has made clear that *Erie* and its progeny do not require the federal court to depart from the Federal Rules in cases where those rules conflict with state law, even if state law is in some sense "substantive." *See Boone v. Knight,* 131 F.R.D. 609, 611 (S.D.Ga.1990). In other words, the substantive nature of a state rule is irrelevant if the federal rule "occupies [the state rule's] field of operation." *See Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4–5, 7, 107 S.Ct. 967, 969–70, 970–71, 94 L.Ed.2d 1 (1987); *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1143–44 (requiring "direct collision" between state and federal law); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980). "If the [federal] rule speaks to the point in dispute and is valid, it is controlling, and no regard need be paid to contrary state provisions." *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir.1995). *See Burlington,* 480 U.S. at 5–6, 107 S.Ct. 967; *Stewart Org., Inc. v. Ricoh,* 487 U.S. 22, 27, 108 S.Ct. 2239, 2242, 101 L.Ed.2d 22 (1988).

In determining whether a conflict exists, the Supreme Court has explained that the "direct collision" language in *Hanna* "expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Stewart Org.,* 487 U.S.

at 27 n. 4, 108 S.Ct. 2239. Federal courts are to "interpret[ ] the Federal Rules with sensitivity to important state interests and regulatory policies." *Gasperini,* 518 U.S. at 427 n. 7, 116 S.Ct. 2211. Although federal courts are not to give the Rules "[a] broad reading that would create significant disuniformity between state and federal courts," *Stewart Org.,* 487 U.S. at 37–38, 108 S.Ct. 2239 (Scalia, J. dissenting), the federal rules are not "to be narrowly construed in order to avoid a 'direct collision' with state law. The ... Rules should be given their plain meaning." *Walker,* 446 U.S. at 750 n. 9, 100 S.Ct. 1978.

Expert disclosure rules and sanctions for failure to comply with those rules are governed in federal court by the Federal Rules of Civil Procedure. Of particular relevance here are Rules 26(a)(2) and 37(c)(1).

Rule 26(a)(2) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R.Civ.P. 26(a)(2)(A). The Rule is geared toward disclosure; it does not require a party to engage an expert. "This disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case, ... be accompanied by a written report prepared and signed by the witness." Fed.R.Civ.P. 26(a)(2)(B). Rule 26 then elaborates on the required content of the expert report:

> An expert report shall contain a complete statement of all opinions to be expressed and the basis and reasons thereof; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten

years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed.R.Civ.P. 26(a)(2)(B). Finally, the Rule provides that "[t]hese disclosures shall be made at the times and in the sequence directed by the court." Fed. R.Civ.P. 26(a)(2)(C). The purpose of these procedures is "to provide information on expert testimony sufficiently in advance of trial [so] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Civ.P. 26, 28 U.S.C.A. (advisory committee notes 1993) (West supp.2000).

Rule 37(c) provides the course of action a court is to take when a party fails to comply with Rule 26's disclosure requirements. In addition to or in lieu of not allowing the non-complying party to use the undisclosed information or witness as evidence at a trial, at a hearing, or on a motion, a court may "impose other appropriate sanctions." Fed.R.Civ.P. 37(c)(1). These sanctions may include dismissing the case against the non-complying party. *Id.*

Section 13.01 provides that in a health care liability claim, not later than 180 days after the date the claim is filed, a claimant shall, for each physician against whom a claim is asserted: (1) furnish to counsel for each physician one or more expert reports, with a curriculum vitae for each expert listed in the report or (2) voluntarily nonsuit the action against the physician. *See* § 13.01(a). The statute outlines what plaintiffs need to include in their expert reports. *See* § 13.01(r)(6). They must set forth (1) the applicable standard of care, (2) the violation of the standard of care, and (3) that the violation caused some

damage. If a plaintiff fails to comply with the time or content requirements, the court *shall order* as sanctions against the claimant or the claimant's attorney (1) reasonable attorney's fees and costs of court incurred by that defendant, (2) the forfeiture of any cost bond respecting the claimant's claim against the defendant, *and* (3) the dismissal of the action against the defendant with prejudice to the claim's refiling. *See* § 13.01(e) (emphasis added). The only exceptions to the mandatory dismissal are found in the accident or mistake provision and the good faith effort provision. *See* § 13.01(g) (if a claimant has failed to comply with the deadline established in 13.01(d), the court may find, after a hearing, that the failure was not intentional or the result of conscious indifference but was the result of an accident or mistake); § 13.01(1) (a court may not grant a motion challenging the adequacy of an expert report unless it determines that the report does not represent a good faith effort to comply with the definition found in section 13.01(r)(6)).

The question then is whether the federal rules are sufficiently broad to control the area addressed by section 13.01 or whether the provisions can operate simultaneously. There is no doubt that the timing provisions, the expert report content requirements, and the sanctions found in Rule 26 conflict with those in section 13.01. An examination of similar cases, however, reveals that there is little agreement among federal courts as to whether this is sufficient to disregard the state provision in a diversity case.

✦ There is no Fifth Circuit case directly on point. There are Fifth Circuit cases that have addressed conflicts between federal rules and state statutes. *See, e.g., Exxon*, 42 F.3d at 949–50; *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir.1987) (Federal Rule 15 not

Texas procedural rule governed whether amended pleading would relate back); *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir.1973) (complaint is sufficient if it satisfies the federal rules, even though it would be subject to demurrer in state court); *Lloyd v. Lawrence*, 472 F.2d 313, 316 (5th Cir.1973) (same); *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591, 603 (5th Cir.1969) (although federal court is bound by the substantive elements of state law, it is "not bound to follow the state law regarding the way the substantive rights must be pled or shown since such matters are governed by the Federal Rules of Civil Procedure"). There are several district court cases from other circuits, however, that address the precise issue here—*i.e.*, whether a state statute designed to curb medical malpractice claims through expert witness disclosure requirements collides with a federal rule of civil procedure.

A district court in Minnesota specifically rejected the supposed conflict between Federal Rule of Civil Procedure 26(a) and a state requirement that plaintiffs in medical malpractice cases submit an "expert disclosure affidavit." *See Ellingson v. Walgreen Co.*, 78 F.Supp.2d 965, 968 (D.Minn.1999). Minnesota's law is substantially similar to section 13.01. *See* Minn.Stat. § 145.682. In *Ellingson*, the plaintiff did not submit the affidavit within the required time frame and defendant moved to dismiss. Plaintiff argued, among other things, that Rule 26(a) controlled the disclosure of expert witnesses instead of the Minnesota statute. In a terse opinion, and with little analysis, the court dismissed that contention.

First, it held that although the Minnesota Supreme Court had held that the statute's timing provisions were procedural, the federal courts that had reviewed the statute had consistently considered the statute as substantive. *See Ellingson*, 78

F.Supp.2d at 968. The district court reasoned that a state court could not have addressed the issue in the *Erie* context; therefore, the Minnesota Supreme Court's labeling of the statute as procedural was irrelevant. *Id.* Second, the court rejected plaintiff's contention that the state statute conflicted with Rule 26(a) because "this contention, too, has been uniformly rejected by the federal courts." *Id.* The cases cited by the court, however, did not address the issue they were cited for. Both of the cases applied the statute, but neither addressed the supposed conflict between Rule 26(a) and the expert disclosure affidavit requirement. *See Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993) (applying state statute without mentioning any conflict with federal rules); *Anderson v. United States*, No. Civ. 5–96–235, 1998 WL 92460, *3 (D.Minn. Jan. 5, 1998) (same). Interestingly, the court in *Ellingson* did not cite *Hanna*, *Burlington*, *Walker*, or *Ricoh* in its discussion of the alleged conflict between the state statute and Rule 26(a). The court's discussion of the substance-procedure dichotomy, moreover, is initially irrelevant under *Hanna*. *See Hanna*, 380 U.S. at 460–61, 85 S.Ct. 1136; *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). What matters first is whether the federal and state rules collide. In this regard, *Ellingson*'s assertion that the state provision is procedural is of little analytical use.

In an earlier case relied upon by *Ellingson* for its procedure/substance conclusion, a district court applied the Minnesota statute in the face of plaintiff's argument that the expert disclosure requirement conflicted with the Federal Rules of Civil Procedure. *See Oslund v. United States*, 701 F.Supp. 710, 713 (D.Minn.1988). The court, however, did not identify the specific federal rule(s) that allegedly conflicted with the statute. Notably, the court did not even mention *Erie*, *Hanna*, or *Burlington*. After noting that the "primary purpose of the statute is to eliminate nuisance malpractice suits," the court concluded that the statute "is not the sort of *purely procedural rule* which should be preempted by the Federal Rules in federal question cases." *Oslund*, 701 F.Supp. at 713–14 (emphasis added). The court reasoned:

> If the contrary were true, the anomalous result would be that the federal government would be exposed to liability when a cause of action involving similar conduct would be dismissed in a diversity case or in a state court action. The more reasonable view is that compliance with § 145.682 is necessary in any claim of malpractice under Minnesota law, no matter how the court obtains jurisdiction over the claim. *Id.* at 714.

Apart from the court's concerns about treating federal question cases the same as diversity and state cases, the implication is that federal rule or no federal rule, it makes more "sense" to apply the state statute—regardless of the fact that the state courts had labeled the statute procedural and regardless of supposed conflicts.

This reasoning, whatever the merits of the conclusion, is insufficient under Supreme Court precedent. Again, characterizing a state statute as substantive as opposed to purely procedural does not answer the question whether the statute conflicts with a Federal Rule of Civil Procedure. *See Hanna*, 380 U.S. at 469, 85 S.Ct. 1136 (holding that the rule of *Erie* does not constitute the appropriate test of the validity and applicability of a Federal Rule of Civil Procedure). Unless a court can find a way to read the rules without conflict, then the *Hanna* line of cases requires a federal court to apply the federal rule.

Other federal courts, however, have reached similar results in analogous cases. *See, e.g., Chamberlain v. Giampapa,* 210 F.3d 154, 159–61 (3d Cir.2000) (applying New Jersey affidavit of merit statute against alleged conflict with Rules 8 and 9); *Clark v. Sarasota County Public Hosp.,* 65 F.Supp.2d 1308, 1313–14 (M.D.Fla.1998) (applying Florida pre-suit screening requirement in face of alleged conflict with Rule 8's pleading standard); *RTC Mortgage Trust v. Fidelity Nat'l Title Ins. Co.,* 981 F.Supp. 334, 343–46 (D.N.J.1997) (state affidavit of merit statute applied by federal court sitting in diversity in face of alleged conflict with Rules 8, 9, and 11); *Connolly v. Foudree,* 141 F.R.D. 124, 126 (S.D.Iowa 1992) (Iowa's statutory requirement of early disclosure of expert witnesses in professional malpractice cases did not conflict with Rule 26(b)(4)(A)(i)); *Daley v. Lerner,* 1990 WL 43372, * 3 (N.D.Ill. Mar. 29, 1990) (finding no conflict between Illinois screening statute because Illinois provision provided for permissive dismissal rather than mandatory); *Hill v. United States,* 751 F.Supp. 909, 910 (D.Col.1990) (applying state-required licensed physician certification procedure in FTCA case); *Thompson v. Kishwaukee Valley Medical Group,* 1986 WL 11381, *2 (N.D.Ill. Oct. 6, 1986) (applying state expert screening requirement in diversity case against alleged conflict with Rules 8, 9, and 11); *Morlan v. Harrington,* 658 F.Supp. 24, 26 (D.N.D. 1986) (applying North Dakota's statute requiring expert testimony within three months of filing suit; not addressing conflict with federal rules).

But other courts have reached different results. The Eleventh Circuit Court of Appeals, for instance, sidestepped plaintiff's argument that Georgia's expert affidavit requirement conflicted with Rule 8. The court concluded that "because the district court erred in dismissing [the plaintiff's] claims with prejudice *whether or not the Georgia expert affidavit requirement applies in diversity cases,* [it] need not decide in which category [procedural or substantive] the requirement belongs." *Brown v. Nichols,* 8 F.3d 770, 773 (11th Cir.1993) (emphasis added). Several courts have concluded, however, that certain state attempts to limit malpractice claims do conflict with the federal rules. These have typically involved statutes that require plaintiffs to attach expert affidavits to their pleadings or face dismissal of their suit. *See Baird v. Celis,* 41 F.Supp.2d 1358, 1361–1362 (N.D.Ga.1999); *Braddock v. Orlando Regional Health Care Sys., Inc.,* 881 F.Supp. 580, 583 (M.D.Fla.1995); *Boone v. Knight,* 131 F.R.D. 609, 611 (S.D.Ga.1990). *See also, Gates v. L.G. DeWitt, Inc.,* 528 F.2d 405, 411 (5th Cir.1976) (Georgia law requiring plaintiff, in a direct action against an insurance company to attach a copy of the insurance policy to his complaint is inapplicable because it conflicts with Rule 8). Another district court held that a New York statute requiring the convening of a medical malpractice panel "would so impinge upon the broad procedural powers of the federal district courts to control and fashion techniques for settlement under Rule 16 that its 'underlying purpose and mandatory mode of operation conflict with the purpose and operation' of Rule 16 ...." *Seck v. Hamrang,* 657 F.Supp. 1074, 1076–77 (S.D.N.Y.1987) (quoting *Burlington,* 480 U.S. at 4–5, 107 S.Ct. 967). The *Seck* court engaged in the proper analysis under *Hanna* and *Burlington.*

There were two central reasons the Supreme Court concluded in *Burlington* that Alabama's statute imposing a mandatory affirmance penalty of 10% of the amount of the judgment conflicted with Rule 38. First, the statute impinged on Rule 38's "discretionary mode of operation." *Bur-*

*lington,* 480 U.S. at 7, 107 S.Ct. 967. Although it was true, as the respondents argued, that a federal court could impose the mandatory fee and remain free to exercise its discretion under Rule 38, that ignored the possibility that a court of appeals may want to exercise its discretion to impose *less* than a 10% penalty. *Id.* at 8, 107 S.Ct. 967. Second, because the purposes of the two provisions were "sufficiently coextensive," the Rule "occupied the statute's field of operation so as to preclude its application in federal diversity actions." *Id.* at 7, 107 S.Ct. 967. As the Court stated: "Federal Rule 38 adopts a case-by-case approach to identifying and deterring frivolous appeals; the Alabama statute precludes any exercise of discretion within its scope of operation." *Id.; see also, Exxon,* 42 F.3d at 949–50 (adopting same reasoning used in *Burlington* to apply Rule 38 instead of Alaska statute); *Hinde v. Provident Life and Accident Ins. Co.,* 112 F.3d 412, 412–13 (9th Cir.1997) (same); *Seck,* 657 F.Supp. at 1076–77. This is the appropriate framework within which to evaluate section 13.01.

■ In this case, the **mandatory timing, report content,** and **sanction** provisions of section 13.01 abrogate the discretion provided by Rules 26(a)(2) and 37. Applying section 13.01 would so impinge on the broad procedural powers of the federal district courts to control discovery that it must yield to the federal scheme. First, the purposes of the federal and state provisions are sufficiently coextensive. Both seek to enable courts to penalize parties that file baseless suits. *See also* Fed.R.Civ.P. 11 (allowing sanctions for frivolous claims) (indicating Rule 37 governs sanctions for discovery disputes). Whereas the federal rules adopt a case-by-case approach to discovery of experts and "to identifying and deterring frivolous appeals," section 13.01 precludes any exercise of discretion within its scope of operation. The federal rules thus occupy the state statute's field of operation so as to preclude its application in federal diversity actions. Section 13.01's mandatory approach, providing a trial court with little discretion, is permissible in state court where the federal rules do not apply. But it cannot apply in federal court.

Second, the timing provisions in section 13.01 directly collide with the discretionary power vested in the federal court. Rule 26 provides that expert report disclosures "shall be made at the times and in the sequence *directed by the court.*" *See* Fed. R.Civ.P. 26(a)(2)(c) (emphasis added). Section 13.01(d), by contrast, provides that expert reports *shall be made* within 180 days from the date of suit. *See* § 13.01(d)(1). If a plaintiff fails to comply with this provision and the defendant files a motion seeking sanctions, a trial court has no discretion and must enter an order dismissing the case with prejudice. *See* § 13.01(e)(3). Thus the discretion provided in the federal rule is wiped out by the state rule.

Third, the federal and state rules require different content to be included in the expert reports. Under Rule 26, an expert report *shall* contain a complete statement of all opinions to be expressed and the basis and reasons thereof; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. *See* Fed.R.Civ.P. 26(a)(2)(B). Under section 13.01, by contrast, the expert

need only set forth (1) the applicable standard of care, (2) the violation of the standard of care, and (3) that the violation caused some damage. *See* § 13.01(a). Which one of these different requirements governs a proceeding in federal court? It is conceivable that a plaintiff could meet the requirements of Rule 26 and fail to meet the requirements of section 13.01. If the requirements of section 13.01 are met, is that sufficient? How about the reverse situation? Must a party meet the requirements of both? Unless one provision is chosen over the other, these questions cannot be answered. The two provisions thus cannot operate simultaneously unless one is subordinate to the other.

Finally, the sanction or penalty provisions in the two rules directly collide. The federal rules, for instance, impose potentially harsh penalties for noncompliance with Rule 26(a)(2)(B). *See* Fed.R.Civ.P. 26(a)(2)(B) (expert must provide a written report containing "a complete statement of all opinions to be expressed"); Fed. R.Civ.P. 37(c)(1) (party who "without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any . . . information not so disclosed"); *id.* ("In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions[;]" these sanctions may include dismissing the case against the disobedient party). But they set discretion in the federal trial judge to determine the appropriate sanction. This is contrary to the mandatory sanction of dismissal in the Texas rule. *See* § 13.01(e). Defendant USA's brief in support of section 13.01 admits that the difference between Rule 26 and section 13.01 is that former is "quite flexible," but asserts that the two can coexist. The Court disagrees.

The problem is that the rules cannot operate simultaneously without one being subordinated to the other. And although the substantive/procedural distinction is not relevant when the state and federal rules directly collide, at best, section 13.01 falls within the uncertain area between substance and procedure and is "rationally capable of classification as either." *Hanna*, 380 U.S. at 472, 85 S.Ct. 1136. In the aggregate, however, even the substantive/procedural distinction weighs in favor of applying the federal rule. The fact that the Texas legislature chose to title section 13.01 "Procedural Provisions" suggests its understanding that the provisions were procedural. Even Texas courts consider section 13.01 to provide procedural, not substantive, rules. *See Broom v. Mac-Master, M.D.*, 992 S.W.2d 659, 662 (Tex. App.—Dallas 1999, no pet.) ("section 13.01 generally establishes procedural provisions to be applied in a lawsuit"). Because the goal of section 13.01(e)'s sanctions is to penalize "frivolous" malpractice suits, it is similar to rules or laws that sanction bad-faith conduct. *See* Black's Law Dictionary 139 (6th ed.1990) (describing "bad faith" on part of insurer as any frivolous or unfounded refusal to pay proceeds of a policy). Those rules are generally deemed procedural and are not applied by a federal court sitting in diversity. *See Ashland Chemical Inc. v. Barco Inc.*, 123 F.3d 261, 264 (5th Cir.1997) ("We therefore must determine whether the Local Rule is procedural, like sanctions for bad-faith conduct, or substantive."). Moreover, section 13.01 does not diminish or enlarge what a plaintiff must substantively prove in a medical malpractice case. It is thus properly considered procedural because it regulates "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction

of them." *See Hanna,* 380 U.S. at 464, 85 S.Ct. 1136, quoting *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 312 U.S. 655, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941). *See also, Johansen,* 810 F.2d at 1380 ("Rule 15(c) is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court."). These points, of course, are not conclusive; but they support the conclusion that section 13.01 attempts to govern territory already occupied by the federal rules.

What matters is that the federal rule is sufficiently broad that it covers the point in dispute. The timing provisions are different; the expert report requirements are different; and the sanctions for noncompliance are different. In each case, the discretion vested in the federal trial judge is abrogated by the state rule. Under *Hanna* and *Burlington,* this is precisely the kind of conflict that forces a choice between applying the federal rule of procedure or the state rule. And in that contest, the federal rules must prevail in federal court.

## IV. Applying the Act

Although the Act's expert reporting provisions do not apply in federal court, even if they did apply, the Court would not strike the reports or dismiss the case against Defendants. Plaintiffs have successfully invoked the exceptions provided for in the statute.

### A. Dr. Spinner's Report

■ Defendant Dr. Bonsukan moves to strike Dr. Spinner's expert report because the report is allegedly inadequate under section 13.01(r)(6). Bonsukan argues that because the report is insufficient under the statute, Plaintiff has failed to meet the expert report 180–day deadline under section 13.01(d). The penalty for such noncompliance is dismissal with prejudice.

Texas courts "read both sections 13.01(e) and 13.01(*l* ) as applying to a trial court's dismissal of a medical malpractice suit for failure to comply with the requirements in providing an expert report." *Palacios v. American Transitional Care Centers of Texas,* 4 S.W.3d 857, 861 (Tex. App.—Houston [1st Dist.] 1999, pet. granted). Thus, the remedy for filing an inadequate report is dismissal under 13.01(e), unless the good faith exception applies:

> A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent *a good faith effort to comply with the definition of an expert report in Subsection (r)(6)* of this section.

§ 13.01(*l* ). The central issue, therefore, is whether Plaintiff's expert report demonstrates a good faith effort to comply with the requirements of section 13.01(r)(6).

To determine whether Plaintiff's effort was a good faith effort, the Court must consider what is required in an expert report and compare that to what Plaintiff provided. The Act requires plaintiffs in medical malpractice cases to set forth (1) the applicable standard of care, (2) the violation of the standard of care, and (3) that the violation caused some damage. *See* § 13.01(r)(6). Plaintiff's expert report provides:

> I have reviewed all the records pertaining to the Shahayla Rose Poindexter case. This infant was seen at the Nacogdoches Memorial Hospital emergency room on July 12, 1998 due to the presence of fever and irritability. At that time Shahayla was seventeen days old, and had a documented rectal temperature of 102 F. in the emergency room. She was examined by a physician, had a CBC and a chest x-ray, and was sent home with a diagnosis of acute viral illness and gastric spasm.

Any infant, twenty-eight days of age or younger, who presents with a rectal temperature of 100.6 F. or higher, should undergo a complete sepsis work-up, including blood and urine cultures, as well as a spinal tap for spinal fluid culture. In addition, the infant should be admitted into the hospital and treated with IV antibiotics pending the results of those cultures.

Clearly, the treatment given Shahayla Poindexter on July 12, 1998 was not appropriate, as it fell well below the standard of care.

Dr. Spinner signed the report, which was produced on his letterhead.

In light of the fact that section 13.01(*l* ) "favors the plaintiff," *see Palacios,* 4 S.W.3d at 862, Dr. Spinner's report represents a good faith effort. There is no reason to take any one sentence in Dr. Spinner's report in isolation. As a whole, the report conveys Dr. Spinner's expert opinion on the standard of care and what Dr. Bonsukan failed to do to comply with that standard. When Dr. Bonsukan treated Shahayla on the night in question, the appropriate standard of care, as described by Dr. Spinner, called for her to undergo a complete sepsis work-up, including blood and urine cultures, as well as a spinal tap for spinal fluid culture. In addition, she should have been admitted into the hospital and treated with antibiotics pending the results of those cultures. Under Dr. Bonsukan's care, on the other hand, Shahayla was "examined," had a complete blood count and a chest x-ray, and was sent home. Dr. Skinner states the way the Defendant failed to meet the applicable standard of care when he lists the actions Defendant *did* take in response to Shahayla's condition and when he lists the actions the Defendant *did not* take. Dr. Spinner concludes his report with the statement that this treatment fell below the standard

of care. This level of detail is sufficient under the section 13.01.

Bonsukan also argues that Dr. Spinner's report is inadequate because it fails to show a causal link between a failure to follow the standard of care and the injury, harm, or damages alleged. He contends that Dr. Skinner's report must "stand on its own." A causal link, in other words, as an element of the required expert report, must be included in each individual report. Defendant cites no authority for this position. Section 13 requires simply that a plaintiff file "one or more expert reports" to support its claim. *See* § 13.01(d). Moreover, section 13 actually seems to provide just the opposite from what Defendant suggests:

> *Notwithstanding any other provision of this section,* a claimant may satisfy any requirement of this section for filing an expert report by filing reports of separate experts regarding different physicians or health care providers or regarding different issues arising form the conduct of a physician or health care provider, such as issues of liability or causation. *Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues* with respect to all physicians or health care providers or *with respect to both liability and causation issues for a physician or health care provider.*

*See* § 13.01(i) (emphasis added). The purpose of this provision is to allow plaintiffs to meet the expert report requirement by filing more than one report addressing some or all of the elements required in such a report.

The Act's expert reporting scheme attempts early disposal of frivolous medical malpractice claims. That goal is not frustrated if a plaintiff obtains more than one expert to report on the same physician.

Assuming for present purposes that Dr. Noel's report will not be stricken, his opinion that "had Shahayla been evaluated and treated appropriately at her first signs of illness, she would have survived this infection," along with Dr. Spinner's report, is sufficient to support the requirements under section 13.01(r)(6).

Importantly, Plaintiffs have offered as much or more than some plaintiffs who have been found to have complied with the Act. *See, e.g., Palacios v. American Transitional Care Ctrs., Inc.,* 4 S.W.3d 857, 859–60 (Tex.App.—Houston [1st Dist.] 1999, pet. granted) (report concluded that a hospital breached the standard of care by not taking precautions for a patient who fell from his hospital bed and suffered yet a second brain injury when he fell due to his history of falling). They have also offered much more than other Texas courts have found to be inadequate under the Act. *See, e.g., Hart,* 16 S.W.3d at 876–77 (expert report did not meet statutory requirements as it did not address standard of care, deviation from that standard, or that a deviation from the standard caused injury or damages but merely concluded that patient was experiencing an acute myocardial infarction when he was patient in emergency room operated and staffed by defendants); *Schorp v. Baptist Memorial Health System,* 5 S.W.3d 727, 732 (Tex.App.—San Antonio 1999, no pet.) (anonymous report filed by patient, asserting that doctor's treatment fell below standard of care did not qualify as an "expert report" within meaning of the Act); *Tibbetts v. Gagliardi,* 2 S.W.3d 659, 662 (Tex. App.—Houston [14 th Dist.] 1999, pet. denied) (striking "expert letters or reports" noting that the letters failed to even show who was drafting the letter but appeared to be a letter requesting an expert opinion by marking a "yes" or "no" to the question of whether the defendant was negligent in his care of the plaintiff). Dr. Spinner's

report, therefore, represents a good faith effort at complying with the requirements of section 13.01. Defendant's motion to strike Dr. Skinner's expert report is DENIED.

### B. Dr. Noel's Report

■ Defendant USA moves to strike the expert report of Dr. Gary J. Noel under section 13.01(e) of the Act and to dismiss all claims against it. Plaintiffs filed Dr. Noel's report 302 days after filing their Original Complaint. Thus, Plaintiffs missed the 180–day deadline by over four months. Defendant USA requests, therefore, that the Court dismiss Plaintiffs claims with prejudice in accordance with section 13.01(e)(3).

Plaintiffs concede that they missed the deadline. Therefore, as their only option to bar dismissal, they request a grace period of 30 days to permit them to comply with section 13.01(d). *See* § 13.01(g); *see also Buruato v. Mercy Hosp. Of Laredo,* 2 S.W.3d 385, 388 (Tex.App.—San Antonio 1999, pet. denied) ("Once a section 13.01(e) motion is filed the only means the plaintiff has of preventing dismissal is to request a 30 day grace period to permit the filing of the missing expert reports"). Section 13.01(g) provides:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing, the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection.

§ 13.01(g). The central question in this case is whether Plaintiff's failure to file the expert report was the result of accident or

mistake. Texas courts interpreting section 13.01(g) have held that "some excuse, but not necessarily a good excuse, is enough to warrant an extension of time to file the expert report, so long as the act or omission causing the failure to file the report was, in fact, accidental." *Horsley–Layman,* 968 S.W.2d at 536.

Plaintiffs have attached the affidavit of their attorney, Glenn Douglas. Douglas states that the failure to file the expert report was not the result of conscious indifference but rather was the result of an accident or mistake. He explains that the 180–day deadline was mistakenly never calendared by his law office. (Pl.s' Resp. Opp'n USA Mot., Exhibit A.) He also states that he had retained Dr. Noel prior to the 180–day deadline to review the case and provide an opinion, even though he did not meet the reporting requirements. These statements, if true, do not support a finding that Douglas' failure to file the expert report within the 180–day deadline was intentional or the result of conscious indifference. Texas courts have held that calendaring errors are not intentional or the result of conscious indifference. *See Presbyterian Healthcare Sys. v. Afangideh,* 993 S.W.2d 319, 323 (Tex.App.—1999, pet.denied); *see also Ferrell v. Ferrell,* 820 S.W.2d 49, 50 (Tex.App.—Corpus Christi 1991, writ den'd); *Kirk v. Farmers Aerial Spraying Service, Inc.,* 496 S.W.2d 739, 741–42 (Tex.Civ.App.—Amarillo 1973, no writ); *Hendricks v. Williams,* 485 S.W.2d 304 (Tex.Civ.App.—Corpus Christi 1972, no writ); *Republic Bankers Life Insurance Company v. Dixon,* 469 S.W.2d 646 (Tex.Civ.App.—Tyler 1971, no writ); *Newsom v. Boyd,* 203 S.W.2d 874, 877 (Tex.Civ. App.—Galveston 1947, no writ). Douglas' failure to calendar the 180–day deadline, therefore, is a sufficient excuse under section 13.01(g).

Unless the nonmovant specifically controverts the evidence presented by the movant regarding a mistaken belief, the movant prevails on the issue of mistake and the statutory provision allowing an extension of time is satisfied. *See Director, State Employees Workers' Compensation Division v. Evans,* 889 S.W.2d 266, 269 (Tex.1994); *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex.1992); *Horsley–Layman,* 968 S.W.2d at 536. Defendant USA seeks to refute the reasonableness of Plaintiff's excuse (1) by arguing that Plaintiffs' counsel complied with the expert report deadline regarding Defendant Dr. Bonsukan, and therefore should have complied with the one for the other defendants, and (2) by speculating that because Dr. Noel's report is dated nearly four months after the expiration of the deadline he could not have been retained within the 180–day time limit. Attacking the reasonableness of Plaintiffs' excuse, however, is not sufficient. Because Defendant USA has offered no controverting evidence, Plaintiff must prevail on the issue of mistake, and section 13.01(g) is satisfied.

The Court, therefore, must grant Plaintiffs a grace period of 30 days to permit them to comply with the provisions of section 13.01(d). Because Dr. Noel's report is on file, however, no grace period is necessary. Defendant USA's Motions to Strike and Dismiss are DENIED.

## V. Conclusion

Because the expert reporting provisions in the Act do not apply in federal court, Defendants' motions to strike and dismiss are DENIED. Even if those provisions do apply, however, Defendants' motions are DENIED because Dr. Skinner's report represents a good faith effort to comply with the reporting requirements and Dr. Noel's report was untimely filed as a

result of an accident or mistake. It is so ORDERED.