Maria Angelina **CRUZ,** Plaintiff,

v.

Charles **CHANG,** M.D.,[1] Defendant.

**No. Civ. EP–03–CA–465(KC).**

United States District Court,
W.D. Texas,
El Paso Division.

Jan. 28, 2005.

---

1. All claims against defendant Tenet Hospitals Limited d/b/a Sierra Medical Center were ordered dismissed (Doc. No. 26) pursuant to the parties' stipulation of dismissal.

907

John Joseph Grost, Attorney at Law, El Paso, TX, Kyle W. Gesswein, Las Cruces, NM, for Plaintiff.

David S. Jeans, Leticia Nunez, Ray, McChristian & Jeans P.C., El Paso, TX, for Defendant.

## ORDER

CARDONE, District Judge.

Defendant moves to dismiss or in the alternative for summary judgment on the present complaint alleging medical malpractice. For the reasons set forth herein, defendant's motion to dismiss is **granted**.

## I. BACKGROUND

The following allegations are set forth in the present complaint. On December 20, 1999, plaintiff was admitted to Tenet Hospitals Limited for evaluation and treatment. Defendant performed a microdiscectomy to treat plaintiff's disc protrusion. During the procedure, plaintiff lost an abnormally large amount of blood. Plaintiff experienced abdominal pain and fainting after regaining consciousness and exhibited low blood pressure for several hours that went untreated. On December 21, 1999, further evaluation revealed an iatrogenic tear of the right internal iliac artery. Dr. Kenneth Eisenberg repaired the tear.

The single count alleges that defendant negligently performed the microdiscectomy by failing to avoid cutting or tearing

the right internal iliac artery, to ascertain the damage done by the operation, to repair properly the right internal iliac artery during the operation, to consult with another physician regarding the substantial blood loss during the procedure, to use reasonable skill, care and diligence in diagnosing the cause of plaintiff's abdominal pain, low blood pressure and blood count change, to consult with another physician regarding plaintiff's condition following the procedure and to monitor properly, recognize and treat complications. As a result of defendant's negligence, plaintiff suffered damage to the nervous system affecting her lower extremities and injury to her brain

## II. DISCUSSION

Defendant moves to dismiss or in the alternative for summary judgment on plaintiff's claims against him based on plaintiff's failure to provide an expert report compliant with the statutory requirements of former section 13.01 of article 4590i of Texas Revised Civil Statutes ("section 13.01") and section 74.351 of the Texas Civil Practice and Remedies Code ("section 74.351").[2] Plaintiff responds that the issue is a state procedural requirement which this Court sitting in diversity need not follow, that the claim was filed in New Mexico and as such the procedural requirement was not required and finally that he has filed the required expert report within 180 days after the case was transferred to this Court.

### A. Standard of Review

Defendant moves to dismiss the present complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The standards are therefore separately provided.

The function of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 776 (2d Cir.1984) (citation omitted).

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A motion to dismiss must be decided on the facts as alleged in the complaint. *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994). All allegations in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. *Id.*

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *S & W Enters. v. Southtrust Bank*, 315 F.3d 533, 537 (5th Cir.2003). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Anderson*, 477

---

**2.** Defendant acknowledges that both statutory provisions are cited as there is some question as to which provision applies to the present case. Mot. Summ. J. at 2.

U.S. at 251, 106 S.Ct. 2505. The weight of evidence and the credibility of witnesses are not proper considerations in deciding a motion for summary judgment as such determinations are exclusively the province of the jury. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).

## B. Governing Law on Texas Medical Malpractice Claim

■ The parties dispute whether the present complaint is governed by the current section 74.351 or the former section 13.01. The parties do not dispute that the complaint was filed prior to the effective date set forth in An Act Relating to Reform of Certain Procedures and Remedies in Civil Actions ("the Act"), 2003 Tex. Gen. Laws 847, 884, that enacted section 74.351. Defendant argues, however, that plaintiff violated section 13.01 procedures by providing insufficient notice prior to filing her complaint and thus should not be permitted to benefit from the arguably less restrictive procedures of the former law.

Section 23.02(a) of the Act provides that "[a]ll articles of this Act, other than Article 17 [pertaining to 'limitations in civil actions of liabilities relating to certain mergers or consolidations'], take effect September 1, 2003." Section 23.02(d) of the Act provides that "[e]xcept as otherwise provided in this section or by a specific provision in an article, this Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose." Section 74.351 was enacted pursuant to Article 10 of the Act. The Governor signed the Act into law on June 11, 2003.

The present complaint was filed in the United States District Court for the District of New Mexico on August 15, 2003 and subsequently transferred to this Court.[3] Assuming arguendo that plaintiff failed to comply with a sixty-day notice requirement under the earlier version of the law, Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01(a) (Vernon 2002) ("[a]ny person . . . asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit"), the relevant demarcation between the governance of the present law and the former law is the date on which the complaint was filed, not the date on which the complaint was filed properly. The Act does not direct that complaints improperly filed prior to its effective date are deemed filed when defects are cured, and this Court lacks the authority to alter the effective date of the Act as a result of any malfeasance on the part of a plaintiff. As such, the present case is governed by section 13.01 and the propriety of plaintiff's conduct in commencing and conducting the present action will be assessed under the former law.

---

3. On January 9, 2004, defendant filed a motion entitled "Motion to Dismiss or for Alternate Equitable Relief." (Doc. No. 2). The docket reflects that the motion was denied as moot on March 22, 2004, apparently through a docketing error, as such the motion was not indicated as pending and this Court did not issue a ruling. In that motion, defendant moved to dismiss the present complaint for failure to provide sixty days written notice of claim prior to filing a complaint pursuant to the former article 4590i and further requested that this Court direct that the disposition of the claim is governed by section 74.351. As the issues in the motion are briefed, they shall be resolved through the present order.

■ It does not appear[4] that plaintiff complied with the notice requirement. The Supreme Court of Texas has provided the proper remedy for such a violation, holding that "in any medical malpractice action subject to article 4590i, where a plaintiff has failed to give notice sixty days prior to the filing of suit, upon motion of the defendant, the cause should be abated for sixty days." *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983). As defendant notes, the Court in *Schepps* was not presented with a violation that occurred on the eve of a significant change in Texas law. The Court in *Schepps* did however note that it disapproved of the holding in *Wilborn v. University Hospital*, 642 S.W.2d 50 (Tex.App. 1982), which indicated that dismissal was an appropriate remedy for defective notice and quoted *Burdett v. Methodist Hospital*, 484 F.Supp. 1338 (N.D.Tex.1980), which held that "if the Legislature had wanted to subject a suit to dismissal for failure to give the notice, the Legislature could, and likely would, have so said." *Schepps*, 652 S.W.2d at 938 (internal quotation marks omitted).

As the Supreme Court in *Schepps* expressly declared the appropriate remedy for defective notice, and it's declaration is plainly an interpretation of legislative intent, this Court may not utilize its equity authority to usurp the legal authority of either the Texas Supreme Court or the Legislature on matters of Texas law. The law on the matter is clear, and this Court must abide by the governing law notwithstanding the notice infraction by plaintiff and equitable circumstances that may counsel deference to defendant's request.

## C. Failure to Provide Expert Report or Curriculum Vitae

■ Defendant argues that the present complaint should be dismissed or summary judgment be granted on the complaint for plaintiff's failure to comply with deadlines for serving an expert report or the expert's curriculum vitae.

The former[5] section 13.01(d) provides that

[n]ot later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under [s]ubsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted: (1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician or health care provider.

If a plaintiff fails to comply with the requirements of subsection (d), subsection (e) provides that

If a claimant has failed, for any defendant physician or health care provider, to comply with Subsection (d) of this

---

4. There was no response filed to defendant's motion, however defendant did file a reply which indicates plaintiff did serve her response on defendant. Defendant's reply indicates that plaintiff served the hospital with notice but not defendant. As the sufficiency of notice is assessed as to each defendant in a multiparty case, *De Checa v. Diagnostic Center Hosp., Inc.*, 852 S.W.2d 935, 938 (Tex. 1993)("we are asked whether a separate sixty-day presuit negotiation period is required for

each party sued ... [and] answer this question in the affirmative"), this Court likely would conclude that plaintiff failed to provide adequate notice regardless of whether plaintiff properly served a separate defendant.

5. The section was repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.09, 2003 Tex. Gen. Laws 847, 884.

section within the time required,[6] the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney: (1) the reasonable attorney's fees and costs of court incurred by that defendant; (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

The Supreme Court of Texas has interpreted subsection (e) as providing that

[i]f the plaintiff fails within the time allowed either to provide the expert reports and curriculum vitae, or to nonsuit the case, the trial court *must* sanction the plaintiff by [1] dismissing the case with prejudice, [2] awarding costs and attorney's fees to the defendant, and [3] ordering the forfeiture of any applicable cost bond necessary to pay that award.

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex.2001)(emphasis added).

Plaintiff does not appear to dispute defendant's contention that she did not provide the expert report or curriculum vitae within 180 days of filing her complaint,

implicitly admitting as much by providing the required documents as an attachment to her motion response. Instead, she argues under the rubric of *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, that subsection (e) is a state procedural rule that this Court, as a federal court sitting in diversity, is not obliged to follow. Plaintiff bases her argument on the decision in *Poindexter v. Bonsukan*, 145 F.Supp.2d 800 (E.D.Tex.2001).[7] As such, while dismissal is mandated if section 13.01 applies to the present proceedings, dismissal likely would not be so required under the federal rules if section 13.01 is found to be inapposite.

### D. The Applicability of Section 13.01 to Federal Diversity Proceedings

A court presented with the application of an allegedly substantive state law, as involved herein, in a federal diversity action proceeds through a two-level inquiry. The initial inquiry, first described in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), is whether a federal rule clearly applies to and addresses the area of state law. *Affholder, Inc. v. Southern Rock, Inc.*, 746 F.2d 305, 307–308 (5th Cir.1984). If a federal rule clearly applies, then there is no need to proceed to the

---

**6.** Subsection 13.01(h), which provides for extensions of deadlines on consent of the parties, is clearly not implicated by the parties. Plaintiff in her response to the present motion moves pursuant to subsection 13.01(g) for a third-day grace period in which to comply with the requirements of subsection (d). Such a grace period is only appropriate if a plaintiff (1) requests an extension *prior to the filing of a motion to dismiss by defendant* and (2) establishes "that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake." Plaintiff's motion is clearly responsive to defendant's motion to dismiss, thus plaintiff may

not avail herself of the grace period provided in subsection (g).

**7.** This is a rather generous assessment of plaintiff's argument, effectively crediting plaintiff with the entirety of the discussion in *Poindexter*. Plaintiff's citation of *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208 (5th Cir.1998), provides only the barest of references to the *Erie* doctrine and is largely a discussion of the availability of attorney's fees provided for under state law in federal proceedings. The response provided by plaintiff to defendant's motion otherwise provides no discussion of how section 13.01 does not apply to the present case.

comparatively unguided analysis set forth in *Erie. Id.* at 308. *"Erie* simply no longer provides the relevant inquiry." *Id.* The *Erie* analysis is appropriate, however, when a federal rule is not clearly applicable.

The *Poindexter* court proceeded no further than the first level inquiry, concluding that "the mandatory timing, report content, and sanction provisions of section 13.01 abrogate the discretion provided by Rules 26(a)(2) and 37. Applying section 13.01 would so impinge on the broad procedural powers of the federal district courts to control discovery that it must yield to the federal scheme." *Poindexter,* 145 F.Supp.2d at 808. In so concluding, the court implicitly includes Federal Rule of Procedure 16, which incorporates the sanctions provided in Rule 37 and makes such sanctions applicable to parties disregarding pre-trial orders. As such, this Court will consider section 13.01 in light of Rules 16, 26 and 37.

The object of this comparative analysis is to determine whether "when fairly construed, the scope of [a federal rule] is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Burlington Northern R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987)(internal quotation marks omitted). A "direct collision" does not imply that the state law and federal procedure are "perfectly coextensive and equally applicable to the issue at hand" but rather requires that "the federal [rule] ... be sufficiently broad to cover the point in dispute." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 26 n. 4, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)(internal quotation marks omitted). In conducting this "direct collision" analysis, the federal rule should be accorded its plain meaning and should not be narrowly construed to avoid conflict with state law. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750 n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

Plaintiff argues, and the court in *Poindexter* agreed, that the state imposed requirement on the filing of expert reports set forth in section 13.01 of Article 4590i is in "direct collision" with Federal Rule of Civil Procedure 26(a). Rule 26(a)(2)(A) governing disclosure of expert testimony, provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Rule 26(a)(2)(B) describes the requirements of expert disclosure for a testifying expert, which includes a report on the substance of expert testimony and the qualifications for rendering such an opinion. Rule 26(a) further provides that

[t]hese disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

FED. R. CIV. P. 26(a)(2)(C).

Section 13.01 directs that one or more expert reports with accompanying curriculum vitae will be provided within 180 days from the commencement of the action. Rule 26(a)(2)(C) provides that testifying expert reports shall be provided at least 90 days prior to the trial date or earlier if directed by the court. If this Court were

to accept the reasoning of the court in *Poindexter* in concluding that the section 13.01 requirement for the filing of expert reports is addressed under the plain meaning of the expert disclosure requirements of Rule 26, it would likely reach the same conclusion as that court under the *Hanna* analysis.[8] This court, however, respectfully disagrees with the court in *Poindexter* on its conclusion that there is a direct collision between the two sections, and that Rules 16 and 37 are implicated by the dismissal remedy.

While this Court may not construe a federal rule narrowly to avoid conflict with state law, it similarly may not accord a rule an unduly broad interpretation to force a conflict between a state law and federal rule. Curiously absent in *Poindexter* is a discussion of section 13.01(k), which provides that "[n]otwithstanding any other law, an expert report filed under this section: (1) is not admissible in evidence by a defendant; (2) shall not be used in a deposition, trial, or other proceeding; and (3) shall not be referred to by a defendant during the course of the action for any purpose." By its plain meaning, the state requirement addressed requirements for a preliminary merits review of claims and prohibited use of expert reports in discov-

ery or trial. *Martinez v. Abbott Laboratories and Abbott Laboratories, Inc.,* 146 S.W.3d 260, 271 (Tex.App.2004)("the purpose of article 4590i is to curtail frivolous claims against physicians and other health care providers ... the expert report must provide a basis for the trial court to conclude that the claims have merit" (citation omitted)). Rule 26, by way of contrast, is entitled "General Provisions Governing Discovery; Duty of Disclosure" and 26(a)(2) pertains to disclosures applicable to "any person who may be used at trial" to provide expert testimony, FED. R. CIV. P. 26(a)(2)(A). The plain meaning of the applicable sections are thereby reconcilable as section 13.01 is irrelevant to claim discovery whereas Rule 26 defines discovery.

The flaw in the reasoning of *Poindexter* is not its analysis of the selected portions of section 13.01 and Rule 26, it is its reading of particular subsections without resort to the entirety of the that state law and federal rule. *Poindexter* is correct under the *Hanna* analysis only if the mere mention of expert reports in Rule 26 is read to dictate the entirety of procedures for expert disclosure rather than simply discovery of expert testimony for use at trial. If it were possible to look at any federal rule

---

**8.** If the governing federal rule is broad enough to encompass the state expert disclosure requirement, the questions become whether (1) the rule is the product of a valid exercise of Congress's rulemaking authority and (2) the rule does "not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *Stewart Org., Inc.,* 487 U.S. at 27 n. 5, 108 S.Ct. 2239; *Burlington Northern R. Co.,* 480 U.S. at 5, 107 S.Ct. 967 (stating federal rule "must then be applied if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act, 28 U.S.C. § 2072"). The Supreme Court has for the most part addressed this inquiry concluding that a rule represents a valid exercise of Congressional

rulemaking authority if it is reasonable. *Burlington Northern R. Co.,* 480 U.S. at 5, 107 S.Ct. 967. As Rule 26(a) governing the time and manner of expert disclosure is not susceptible to characterization as a matter of substance rather than procedure, it is "*a priori* constitutional," *id.,* satisfying the first part of the inquiry. As to the second part of the inquiry, the Supreme Court noted that "Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules," *id.,* and further that given the safeguards provided through rulemaking procedures "the Rules [are] presumptive[ly] valid[ ]" under both the constitutional and statutory constraints." *Id.* at 6, 107 S.Ct. 967.

under a sufficient degree of abstraction, there would always be a direct collision between federal rule and state law. The only conceivable similarity between section 13.01 and Rule 26 is that both provisions require production of expert reports. The provisions by definition cannot overlap as the former is by definition a non-discovery procedure and the latter is a discovery procedure. There is no federal rule that correlates to section 13.01 as would be expected of a state law tied to a substantive state law claim. As such, this Court concludes there is no direct collision between section 13.01 and Rule 26, and the *Erie* analysis appropriately resolves the application of section 13.01 in federal court.[9]

The Supreme Court recently articulated the *Erie* doctrine in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). The *Erie* analysis starts with the general proposition that "[f]ederal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Id.* at 426, 116 S.Ct. 2211. As such, federal courts are required to apply state substantive law and federal procedural law. *Id.* at 427, 116 S.Ct. 2211.

While the requirement may appear straightforward, "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Id.* An early attempt to articulate a standard for distinguishing the two resulted in the "outcome-determination" test: "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* (internal quotation marks omitted). This rule attempted to address the concern that for cases involving diversity jurisdiction, "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* at 428, 116 S.Ct. 2211 (internal quotation marks omitted). "[W]hen local law that creates the cause of action qualifies it, federal court must follow suit, for a different measure of the cause of action in one court than in the other [would transgress] the principle of *Erie*." *Id.* (internal quotation marks omitted). The "outcome-determination" test was later tempered to avoid mechanical application as "its application must be guided by the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* (internal quotation marks omitted).

Applying the outcome determinative standard tempered by the aims of *Erie*, the outcome becomes apparent and is consistent with the conclusion of the Court of Appeals for the Third Circuit in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). In restricting the right to proceed with medical malpractice claims by requiring expert reports early in the proceedings to weed out frivolous claims, the Legislature clearly intended to influence substantive outcomes. The filing of an expert report is not simply a procedure *qua* procedure but is instead a vehicle for dismissal of frivolous claims. Obviously, the refusal to recognize section 13.01 results in the survival of the medical malpractice claim. The expert report requirement

---

9. It is noteworthy that federal rules have not been rigid on issues involving expert testimony. Rather than defining the requirements for expert testimony on all claims in the federal forum, Federal Rule of Evidence 601 provides that the competency of experts are governed by state law if the testimony is addressed to state claims.

therefore satisfies the outcome determinative test.

As the court concluded in *Chamberlain*, the aims of *Erie* do not alter this conclusion. Refusal of federal courts to recognize the requirements set forth in section 13.01 do encourage forum shopping as plaintiffs are not obliged to provide expert support for their claim and as such may engage in "fishing" expeditions through discovery to identify supportable claims. *Id.* at 161. Such would not be possible in state court. Liberal federal pleading requirements would preclude any negation of this problem through motions to dismiss, and as such malpractice claims would survive until the factual basis could be tested through a motion for summary judgment.

A different outcome is not required under the second aim of *Erie*, avoidance of inequitable administration of the laws. If an expert report were not required, a defendant would be required to endure a full battery of discovery and protracted litigation prior to dismissal of a non-meritorious lawsuit. *Id.* Even if defendant filed an early motion for summary judgment under Federal Rule of Civil Procedure 56, plaintiff could request a continuance to obtain affidavits and would likely refer to expert disclosure deadlines provided pursuant to Rule 26(a)(2) or a scheduling order in quantifying the amount of time required to respond to such motion. As the Court in *Chamberlain* notes, such result would be wholly attributable to the fact that plaintiff and defendant are not citizens of the same state as citizens of the same state could not seek refuge in federal courts. *Id.* More significantly, the *Chamberlain* court notes that "the reputation of the profes-

sional involved would be more likely to suffer the longer the lawsuit went on, putting added pressure on the defendant to settle rather than endure extensive discovery." *Id.* These results in affording a plaintiff the benefit of a federal forum rather than a state forum cannot be viewed as equitable administration of the laws between the federal and state forums.

### E. Application of Section 13.01(e)

As section 13.01 is not displaced by federal rule and is found to be part of a comprehensive scheme governing plaintiff's substantive right in state court proceedings, this Court is bound to apply the requirements of section 13.01. As set forth above, section 13.01(e) requires dismissal of a medical malpractice action with prejudice if an expert report is not filed within 180 days. There is no dispute that plaintiff did not comply with the requirements of section 13.01(d) by filing an expert report and curriculum vitae within 180 of filing the present action.[10] The complaint therefore must be dismissed with prejudice.

This Court regrettably is obliged to dismiss this case under a correct application of the law. It is unfortunate that the merits of plaintiff's claim will not be heard, and this Court may not contort the law to permit such a result. It is apparent that plaintiff's counsel was aware that Texas law would govern these proceedings, unless it is dismissed as mere coincidence counsel's filing of the present action on a claim accruing in 1999 almost four years after accrual and a mere two weeks before a well-publicized and significant change in Texas malpractice law was to go into ef-

10. Plaintiff's argument that 180 days should run from the date the case was transferred from New Mexico is wholly without support in law. The relevant date for purposes of calculating the 180 day deadline is the date on which the complaint was filed as such equates to "the date on which a health care liability claim is filed." No subsequent occurrence change that date.

fect. It appears, and the order transferring the case to this Court supports, that any medical procedure took place in Texas. A rudimentary application of virtually any choice-of-law analysis under such facts would have pointed to Texas law as providing the governing substantive law.

If counsel relied on *Poindexter* as an accurate statement of the law, notwithstanding the fact that it is not binding authority on any federal court and not even a decision of this district, such reliance is belied by the absence of analysis of that decision in the response to defendant's motion. Ultimately, the present motion to dismiss is entirely avoidable through simple compliance with Texas procedures in the filing of an expert report and curriculum vitae rather than gambling on the outcome of a ruling on a motion to dismiss. Such a simple measure would have insured that the present action would survive to a point in the litigation where the merits could be heard and the validity of the claims assessed by this Court.

## III. CONCLUSION

Defendant's Motion to Dismiss (Doc. No. 14) is **granted**. Defendant's alternative Motion for Summary Judgment (Doc. No. 14) is **denied as moot**. Defendant Tenet Hospitals Limited d/b/a Sierra Medical Center Motion to Dismiss (Doc. No. 12) is **denied as moot** in light of the dismissal of that defendant. Defendant Chang's Motion for Hearing on the present motion (Doc. No. 30) is also **denied as moot** in light of the present ruling. The Clerk shall close the file.

SO ORDERED.