**Exhibit B - The Court's Designated Class Boundary**

Ruth Rivera GARZA, Individually and as Executrix of the Estate of Jimmy M. Garza, Deceased, and as Next Friend of Jimmy Junior Garza, Steffane Marie Garza, and Joe Angel Garza; and Georgia Rivera Garza, Plaintiffs,

v.

SCOTT AND WHITE MEMORIAL HOS-

618

PITAL AND SCOTT, Sherwood and Brindley Foundation, Dr. Craig Staebel, and the United States of America, Defendants.

No. A 05 CA 264 SS.

United States District Court,
W.D. Texas,
Austin Division.

Nov. 14, 2005.

Scott Ozmun, Whitehurst, Harkness, Ozmun Brees, Austin, TX, for Plaintiffs.

R. Barry Robinson, Assistant U.S. Attorney, R. Chad Geisler, Germer Gertz Beaman & Brown LLP, Austin, TX, for Defendants.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 25th day of October 2005, the Court called the above-styled cause for a hearing, and the parties appeared through counsel. Before the Court were Defendants Scott and White Memorial Hospital and Scott, Sherwood, and Brindley Foundation ("Scott and White") and Craig Staebel's Motion for Judgment on the Pleadings, Motion to Sever, and Motion for Sanctions [# 18] and Plaintiffs' Motion to Compel Discovery from Defendants Staebel and Scott and White [# 16]. Having considered the motions, responses, and replies, the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiffs Ruth Rivera Garza, individually and as executrix of the Estate of Jimmy M. Garza, Deceased, and as next friend of Jimmy Junior Garza, Steffane Marie Garza, and Joe Angel Garza, and Georgia Rivera Garza bring this action against Defendants Scott and White, Staebel, and the United States of America for their role in the alleged wrongful death of Jimmy M. Garza. Ruth Rivera Garza is the surviving spouse of Jimmy M. Garza. The remaining plaintiffs are Mr. Garza's sons and daughters. According to Plaintiffs, Mr. Garza underwent laparoscopic surgery at the Central Texas Veteran's Health Care System ("CTVHCS") on November 5, 2002. Defendant Staebel, a surgical resident employed by Scott and White, performed the surgery under the supervision of Dr. Vijay Mehta, a staff surgeon at Olin E. Teague Veterans' Center. According to Plaintiffs, Garza suffered a perforation of the small intestine during the course of his surgery, which resulted in numerous adverse health effects and ultimately caused his death. Based on these facts, Plaintiffs assert Federal Tort Claims Act ("FTCA") claims against the United States of America based on the negligent acts and omissions of CTVHCS's agents and employees. Plaintiffs also assert common law negligence claims against Defendants Staebel and Scott and White.

Staebel and Scott and White now move the Court for judgment on the pleadings, to sever, and for sanctions against Plaintiffs on the grounds that Plaintiffs failed to file an expert report within 120 days of filing suit pursuant to § 74.351 of the Texas Civil Practice and Remedies Code. Plaintiffs, on the other hand, have moved the Court for an order compelling Staebel and Scott and White to produce certain items related to Staebel's personnel file and employment records at Scott and White. The Court considers each motion in turn.

### Discussion

### I. Staebel and Scott and White's Motion for Judgment on the Pleadings, to Sever, and for Sanctions

Staebel and Scott and White contend that under § 74.351 of the Texas Civil Practice and Remedies Code, Plaintiffs' failure to file expert reports concerning the alleged medical malpractice of Defendants within 120 days of bringing suit requires the dismissal of Plaintiffs' claims and an award of sanctions in their favor.

Section 74.351 requires a plaintiff who has initiated an action on "a health care liability claim" to serve on each party "not later than the 120th day after the date the claim was filed ... one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE § 74.351(a). The report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed." Id. § 74.351(r)(6). The Texas Supreme Court has indicated that the expert report

requirement was enacted by the Texas Legislature to serve two functions: (1) to inform the defendants of the specific conduct the plaintiff has called into question; and (2) to deter frivolous claims by providing the trial court with an opportunity to make an initial determination about whether a particular claim has merit. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001).

Section 74.351 curtails the potential for plaintiffs with frivolous claims to burden health care providers with litigation costs in two ways. First, it operates to stay much of the discovery in the case pending the filing of the expert report. TEX. CIV. PRAC. & REM. CODE § 74.351(s), (u). Second, it provides defendants with an independent procedural mechanism for early dismissal of claims. Under subsection (b) of the statute, if the plaintiff fails to serve any defendant physician or health care provider with the required expert report within 120 days of bringing suit (or some later date, if the parties have agreed to extend the deadline), the court, "on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:"

> (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and
>
> (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM. CODE § 74.351(b). A dismissal under § 74.351(b) may be grounded not only on the outright failure of a plaintiff to serve an expert report, but also on a plaintiff's service of a deficient report, such that the plaintiff has failed to demonstrate "an objective good faith effort" to comply with the statutory requirement. *Id.* § 74.351(c), (*l*). In this case, Defendants challenge Plaintiffs' outright failure to serve them with expert reports.

Plaintiffs do not dispute that they did not serve Defendants with expert reports within

120 days of filing this lawsuit. However, they argue that the provisions of § 74.351 are inapplicable in this action on two grounds. First, because §. 74.351 is procedural rather than substantive in nature, Plaintiffs contend the Federal Rules of Civil Procedure and the local rules of this Court preempt its application here. Second, Plaintiffs contend that even if § 74.351 applies in this case, by signing off on the parties' Joint Proposed Scheduling Order, Defendants entered into a written agreement to extend the 120–day deadline .as contemplated by the statute. The Court considers the question of whether § 74.351 has any application in federal court first.

### A. Applicability of TEX. CIV. PRAC. & REM. CODE § 74.351 in Federal Court

 As a general rule, under the *Erie* doctrine, when a plaintiff asserts a state law claim in the federal court, the Court looks to state law in determining the substantive law that governs the claims, but it looks to federal law in determining the procedural law to be applied in the action. *See Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391, 394 (5th Cir.2003) ("Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings.") (quoting *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir.1995)).[1] Because the question of whether a particular provision of law is substantive or procedural is usually not straightforward, the Court must undertake a multi-step inquiry to determine the applicability of the disputed provision of state law. The first step in this inquiry is to determine whether any validly enacted federal statute or rule governs the matter covered by the state law at issue. *Burlington N.R. Co. v. Woods,* 480 U.S. 1, 4, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). If, when "fairly construed," a particular federal statute or rule is sufficiently broad to cause a "direct collision" with the relevant provision of state law, federal law preempts the operation of the state law. *Id.* at 4–5, 107 S.Ct. 967.

---

1. Although the cases discussing the procedure-substance distinction typically arise in contexts in which federal subject-matter jurisdiction is premised on diversity of the parties, there is no principled basis for treating the issue any differently when a state law claim is in federal court pursuant to 28 U.S.C. § 1367, the supplemental jurisdiction statute.

■ A number of different federal courts have concluded that § 74.351 (or its predecessor, former § 13.01 of TEX. REV. CIV. STAT. ANN. art. 4590i (Vernon 2002)) is a procedural statute that directly collides with applicable Federal Rules of Civil Procedure. The leading case on the issue is *Poindexter v. Bonsukan*, 145 F.Supp.2d 800 (E.D.Tex.2001). In *Poindexter*, the court conducted a lengthy and thoughtful analysis on the applicability of Texas's expert report requirement in federal court by comparing its purposes and effects with those of Rules 11, 26, and 37 of the Federal Rules of Civil Procedure. *Id.* In ultimately holding a direct collision existed, the court noted first that the purposes and policies of the federal and state provisions were sufficiently coextensive to create a potential conflict. *Id.* at 808.; *cf. Exxon*, 42 F.3d at 950 ("Where the state rule reflects a substantive state policy *not in conflict* with the plain meaning of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* doctrine.") (emphasis added). The Court noted that although both the Texas statute and Rule 11 of the Federal Rules of Civil Procedure are both directed at the deterrence of frivolous lawsuits, the state provisions are mandatory in their operation, whereas Rule 11 requires a flexible, "case-by-case" approach. *Id.; see also American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir.1992) ("Under Rule 11, the district court has broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11. Proper objectives of Rule 11 sanctions are to deter, to punish and to compensate opposing parties. The court should use the least severe sanction that is adequate to fulfill this purpose.") (internal citations omitted).

In addition to the deterrence goals of the state expert report statute and the federal rules, the *Poindexter* court also looked at their overlapping discovery-related purposes. Both sets of provisions govern the timing for filing and content of expert reports, as well as the sanctions to which parties may be subjected for failure to timely file such reports. *Poindexter*, 145 F.Supp.2d at 808–09. As with Rule 11 determinations, the federal rules vest substantial discretion in the trial court with respect to the time for filing expert reports, whereas the Texas statute imposes a strict 180–day deadline, which may only be extended by agreement of the parties. *Id.* Finally, while both Rule 26 and the state statute address the content of expert reports, the specific requirements imposed by each are clearly different.

The majority of courts that have considered the question have followed *Poindexter* in holding that Texas's expert report requirement is inapplicable in federal court. *See, e.g., Brown v. Brooks County Det. Ctr.*, No. C.A. C–04–329, C.A. C–04–375, 2005 WL 1515466 (S.D.Tex. June 23, 2005); *Nelson v. Myrick*, No. Civ. A.3:04–CV–0828–G, 2005 WL 723459 (N.D.Tex. Mar.29, 2005); *McDaniel v. United States*, No. Civ. A.SA–04–CA–0314, 2004 WL 2616305 (W.D.Tex. Nov.16, 2004). *But see Cruz v. Chang*, 400 F.Supp.2d 906 (W.D.Tex.2005).

Plaintiffs urge the Court to follow *Cruz*, the sole district court decision to depart from the reasoning in *Poindexter*. In *Cruz*, the court concluded that the Texas expert report statute was "not displaced by federal rule and is found to be part of a comprehensive scheme governing plaintiff's substantive right in state court proceedings," and dismissed the plaintiff's case on the basis of her failure to file an expert report within 180 days of filing suit. *Cruz*, 400 F.Supp.2d 906, 915–16. The *Cruz* court rejected the reasoning in *Poindexter* on the grounds that, in its view, the Texas "expert report" statute is directed solely at "a preliminary merits review of claims" and is entirely irrelevant to discovery. *Id.* Because the court found no conflict between the state expert report requirement and the relevant federal discovery rules, it held there was no "direct collision" to prevent application of the expert report requirement in federal court. *Id.* Accordingly, the court concluded it was bound to apply the state statute.

This Court respectfully disagrees with the reasoning in *Cruz* and opts to apply the majority rule in this case for three reasons. First, *Cruz* entirely ignored *Poindexter's* analysis of the competing state and federal policies with respect to the deterrence of

frivolous claims. Thus, even if this Court were willing to accept that § 74.351 is not sufficiently related to discovery to create a conflict with Rules 26 and 37, the two different sanctions schemes in the state and federal systems are sufficiently in tension to prohibit application of the state statute. The mandatory sanctions scheme created by § 74.351 would completely remove the Court's discretion with respect to the imposition of sanctions for the filing of frivolous claims—discretion with which it is vested under Rule 11 of the Federal Rules of Civil Procedure. Because it would get in the way of the operation of Rule 11, § 74.351 cannot apply in federal court.

Second, it is simply inaccurate to characterize § 74.351 as being "irrelevant" to discovery. As noted by the court in *Nelson,* although the predecessor statute at issue in *Cruz* made expert reports unavailable for use at trial, depositions, or other proceedings, § 74.351 removes these restrictions as soon as the plaintiff makes an affirmative use of the report. *Nelson,* 2005 WL 723459, at *3 n. 2. Moreover, viewed in context, § 74.351 has numerous other extensive effects on the course of discovery. For instance, the statute provides that most discovery is to be stayed until the plaintiff's expert reports have been filed. This aspect of the statute is in direct and unambiguous conflict with the federal rules, which plainly tie the opening of discovery to the timing of the Rule 26(f) conference. *See* FED. R. CIV. P. 30(a)(2)(c), 31(a)(2)(c) (depositions); FED. R. CIV. P. 33(a) (interrogatories); FED. R. CIV. P. 34(a) (requests for production).

Moreover, although the court in *Cruz* appeared to treat the preliminary merits review made possible by the Texas expert report requirement as the primary function of the reports, the Texas Supreme Court plainly considers notification of defendants of the specific conduct at issue in suits against them to be another significant function of the reports. *Am. Transitional Care Ctrs. of Tex.,* 46 S.W.3d at 879. In this respect, § 74.351 plainly trenches on the province of the discovery available under Rule 26. *Compare Sheek v. Asia Badger, Inc.,* 235 F.3d 687, 693–94 (1st Cir.2000) (noting that the broad purpose of discovery under Rule 26 is "the narrowing of issues and the elimination of surprise.") (quoting *Johnson v. H.K. Webster, Inc.,* 775 F.2d 1, 7 (1st Cir.1985)).

Finally, even if § 74.351 did not directly collide with the operation of the federal rules, the Court would nonetheless hold the statute to be unenforceable in federal court in light of its interference with federal interests. In *Hibbs v. Yashar,* 522 F.Supp. 247 (D.R.I. 1981), the District Court for the District of Rhode Island was faced with a state claims screening statute which placed the initial burden of conducting an initial merits review on the trial court. *Id.* at 249. The court held that the screening process contemplated by the statute "would impose significant and potentially onerous burdens on the already overburdened Federal Judges in [the] state," and "would serve to disrupt the orderly flow of cases." *Id.* at 253–54.

This Court concurs with the analysis in *Hibbs.* The federal rules already provide defendants with a variety of procedural mechanisms through which claims against them may be disposed (e.g., summary judgment and dismissal for failure to state a claim). *See* FED. R. CIV. P. 12, 56. The addition of a new mechanism by which a plaintiff's claims may be challenged—a mechanism which is neither authorized nor even contemplated by the Federal Rules of Civil Procedure—would interfere with the well-established procedures by which the federal courts have long resolved the cases before them. Moreover, it would require the Court to delve into the adequacy of expert reports at a time far in advance of trial—an exercise routinely eschewed by this Court in light of the practical difficulties associated with the evaluation of such reports without appropriate context.

For each of the foregoing reasons, the Court holds § 74.351 of the Texas Civil Practice and Remedies Code has no application in federal court. Accordingly, the Court does not reach the question of whether Defendants entered into a written agreement to extend the 180–day deadline imposed by the statute.

## II. Plaintiffs' Motion to Compel Discovery from Defendants Staebel and Scott and White

The Court next turns to consider Plaintiffs' Motion to Compel Discovery from Defendants Staebel and Scott and White. In their motion, Plaintiffs identify the following classes of documents for which they seek an order compelling production: (1) Staebel's personnel file and employment records; (2) documents setting out requirements for the supervision of general surgery residents at Scott and White; (3) evaluations performed by the Residency Program Director and supervisory documents concerning Staebel; (4) documents setting out Staebel's duty hours during the 2002 calendar year; and (5) Staebel's residency program appointment letter.[2] Defendants oppose the motion on two grounds. First, they argue some of the requests are overbroad and irrelevant because Staebel was under the control of the VA hospital at the time of the incident. Second, they argue that the majority of documents covered by Plaintiffs' requests are part of Staebel's credentialing file,[3] which is privileged under three different theories. First, the credentialing file is entitled to protection under the Federal Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g. Second, the credentialing file is protected by privilege under state statute and federal common law. Finally, the Health Care Quality Immunity Act, 42 U.S.C. § 11111(a) ("HCQIA"), provides a privilege against the disclosure of the credentialing file.

■ The Court first considers Defendants' argument that Staebel's file is protected from discovery by FERPA. FERPA generally provides that the Department of Education may out off federal funding to a school system that does not comply with its provisions. 20 U.S.C. § 1232g. Among these provisions is the requirement that personal information of students may not be released without parental consent. 20 U.S.C. § 1232g(b)(1). By its plain terms, FERPA does not create an

evidentiary privilege, and the Court agrees with prior decisions holding that documents covered by FERPA are indeed discoverable in the context of a civil action. *E.g., Ellis v. Cleveland Mun. Sch. Dist.,* 309 F.Supp.2d 1019, 1023–24 (N.D.Ohio 2004).

■ Defendants' second argument is that the documents sought by Plaintiffs are protected by the Texas physician credentialing or peer review privilege. Alternatively, they contend the documents are protected by the same privilege under federal common law. The Court begins by addressing the question of whether state or federal law covers the point in issue.

■ Generally, the federal common law of evidentiary privilege applies in disputes arising under the federal court's federal question jurisdiction. *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 926 (7th Cir.2004). In cases arising under the court's diversity jurisdiction, in which state law claims are asserted, on the other hand, the state law of evidentiary privileges applies. *In re Avantel, S.A.,* 343 F.3d 311, 318 n. 6 (5th Cir.2003). When state law claims appear in federal question cases pursuant to the federal court's supplemental jurisdiction, however, it is not immediately clear what law should apply. Neither the Fifth Circuit nor the United States Supreme Court has yet resolved the issue. *See, e.g., Jaffee v. Redmond,* 518 U.S. 1, 17 n. 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (declining to decide "the proper rule in cases ... in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law").

The Court begins its analysis with the text of Rule 501 of the Federal Rules of Evidence. That rule provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statuto-

---

2. Plaintiffs seek all five classes of documents from Scott and White. With respect to Staebel, Plaintiffs only seek an order compelling the production of the evaluations by the Residency Program Director and supervisory documents.

3. At the hearing, counsel for Defendants indicated Staebel's non-confidential, human resources file has already been produced.

ry authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501.

The various circuit courts that have had the opportunity to interpret the meaning and effect of this rule have taken divergent approaches. Some have held that any time federal and state claims are present in the same lawsuit, the federal law of privilege should apply to the entire lawsuit. *E.g., Virmani v. Novant Health Inc.,* 259 F.3d 284, 287 n. 3 (4th Cir.2001); *Hancock v. Dodson,* 958 F.2d 1367, 1372–73 (6th Cir. 1992); *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 104 (3d Cir.1982). *Cf. von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987) (applying the federal law of privilege in part based on the premise that Congress intended federal privilege law to apply to all pendent state law claims, but noting that the evidence sought in the case before it was relevant to both the federal and the state claims).

Others have taken a more nuanced approach, applying state privilege law to evidentiary materials that are related to pendent state claims, so long as they are unrelated to any federal claims. *See Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir.1995) (Reavley, J., sitting by designation) (applying state law to privilege issues that were relevant to state causes of action in a case in which federal claims were also present). *Cf. Pearson v. Miller,* 211 F.3d 57, 66 n. 8 (3d Cir.2000) (applying federal privilege law because the discovery materials at issue were related to both state and feder-

al claims, but expressly leaving open the possibility that state privilege law would apply if the materials were only relevant to the state claims).

The Court finds the latter approach to be more faithful to the text of the rule itself. Notably, Rule 501 does not, by its terms, limit the application of state privilege law to *cases* in which state law provides the rule of decision. Rather, the rule directs the application of state law with respect to elements of claims and defenses as to which state law supplies the rule of decision. FED. R. EVID. 501. Thus, there is nothing in the text of the rule to suggest that its application is to be limited to diversity jurisdiction cases. Indeed, the plain implication of the text of the rule is that state privilege law should apply whenever an element of a state law claim or defense is at issue.

■ Furthermore, although the Court has no difficulty with the general proposition that federal privilege law should trump application of state law when a particular piece of evidence is relevant to both federal and state claims, that is not the case here. Plaintiffs have not presented any colorable argument that Staebler's personnel file at Scott and White would have any bearing whatsoever on their FTCA claims against the United States. Rather, based on their arguments at the hearing, it appears the sole purpose of the evidence they now seek would be to establish a negligent credentialing claim against Scott and White—undoubtedly a state law claim. The Court holds that in a case such as this, in which the evidence sought by Plaintiffs applies exclusively to state law claims, state privilege law applies under Rule 501, notwithstanding the presence of federal claims in the case.[4]

### A. Medical Committee/Peer Review Privilege Under Texas Law

■ Under Texas law, the records and proceedings of a medical committee are privileged against disclosure by statute. TEX. HEALTH & SAFETY CODE § 161.032; TEX. OCC.

---

4. In light of the fact the Court holds that state privilege law applies in this action, the Court does not separately address the question of

whether a peer review or credentialing privilege exists under federal common law or the HCQIA.

CODE § 160.007. The Texas Supreme Court has identified two premises supporting these privileges: "first, that exacting critical analysis of the competence and performance of physicians and other health-care providers by their peers will result in improved standards of medical care; and second, that an atmosphere of confidentiality is required for candid, uninhibited communication of such critical analysis within the medical profession." *Memorial Hospital–The Woodlands v. McCown,* 927 S.W.2d 1, 3 (Tex.1996). The peer review committee privilege has been held to apply whether the committee's functions are performed in the context of the review of already credentialed staff members or as part of the initial credentialing process. *Id.* Moreover, the privilege applies not only to documents and information generated by the committee itself but also to information submitted by an applicant seeking staff privileges. *Brownwood Regional Hosp. v. Eleventh Court of Appeals,* 927 S.W.2d 24, 27 (Tex.1996).

Scott and White and Staebel have provided the Court with the affidavit of Paul Ogden, who was the Director of the Graduate Medical Education Committee ("GMEC") at Scott and White at the time of the events in suit. Defs.' Resp. Mot. Compel, Ex. B. Ogden indicates that the GMEC is responsible for the process of the initial credentialing as well as the ongoing recredentialing and promotion of residents. *Id.* He states that a confidential file on each Scott and White resident is generated and maintained by the GMEC in connection with the credentialing and recredentialing process. *Id.* The file includes, among other things, evaluations by physician supervisors, which are used to determine the appropriate academic promotion of residents. *Id.* Ogden indicates that aside from the material contained in Scott and White's human resources file on Staebler, which has already been produced to Plaintiffs, all of the documents sought by Plaintiffs are part of the credentialing file generated for and maintained by the GMEC.

### B. Documents Requested by Plaintiffs

■ The Court considers each of the items sought by Plaintiffs individually. The first set of documents Plaintiffs seek in their motion to compel is Staebel's personnel file and employment records. Defendants have indicated they have already produced Staebel's non-confidential human resources file. Ogden's affidavit establishes that all other documents that might fall within this description are part of Staebel's confidential credentialing file. Absent any evidence from Plaintiffs to contradict this assertion, the Court has no basis on which to look past Ogden's representations on this point. Accordingly, the Court declines to require Defendants to produce Staebel's personnel file and employment records.

■ Plaintiffs also seek all documents setting out the requirements for the supervision of general surgery residents at Scott and White. There is no colorable argument that such general policy documents are specifically part of the credentialing file maintained by Scott and White on Staebel. *See Brownwood,* 927 S.W.2d at 27 (holding documents that were "not records, reports, or proceedings of a hospital or medical peer review committee," and that did not "reveal communications to such a committee" were not privileged). To the extent these documents have not been produced already, they shall be produced to Plaintiffs within 10 days of the date of this order.

■ Plaintiffs also seek evaluations performed by the Residency Program Director and supervisory documents concerning Staebel. Such documents fall squarely within the medical peer review committee privilege and thus are not discoverable in this action.

■ As to the documents setting out Staebel's duty hours during the 2002 calendar year, Plaintiffs have failed to establish the relevance of such documents. The two significant aspects of Staebel's employment are undisputed in this action. On the one hand, there is no question that Staebel was employed by Scott and White at all times relevant to this lawsuit. On the other hand, there is no dispute that Staebel was on a rotation at the VA hospital during the time the events in suit transpired. Staebel's particular duty hours at Scott and White during

2002 would appear to have little, if any, bearing on the material facts at issue in this case.

Finally, Plaintiffs seek Staebel's residency program appointment letter. The appointment letter is not specifically discussed in Ogden's affidavit, and it is not immediately obvious to the Court that this letter would be covered by the medical peer review privilege. Accordingly, Scott and White shall, within 10 days, either: (1) produce the appointment letter(s) to Plaintiffs; or (2) submit the letter(s) to the Court for an in camera inspection, along with a clear identification of the basis for the assertion of the privilege.

### Conclusion

In accordance with the foregoing:

IT IS ORDERED that Defendants Scott and White and Staebel's Motion for Judgment on the Pleadings, Motion to Sever, and Motion for Sanctions [# 18] are DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel Discovery from Defendants Staebel and Scott and White [# 16] is GRANTED IN PART and DENIED IN PART as specifically set forth herein;

IT IS FURTHER ORDERED that Scott and White shall, within ten (10) days of the date of this order, produce to Plaintiffs all documents responsive to Request No. 26 in Plaintiffs' First Request for Production of Documents to the extent such documents have not already been produced; and

IT IS FINALLY ORDERED that Scott and White shall, within ten (10) days of the date of this order, produce to Plaintiffs all documents responsive to Request No. 31 in Plaintiffs' First Request for Production of Documents to the extent such documents have not already been produced. Alternatively, Scott and White may submit to the Court, within ten (10) days of the date of this order, any documents it contends are privileged for an in camera inspection, along with a clear identification of the basis on which the privilege is asserted.